**Harry Robert BURTON, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–06–00068–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 17, 2007.

Randall J. Ayers, Houston, for Appellant.

Bridget Holloway, Houston, for State.

Panel consists of Justices YATES, FROST, and SEYMORE.

## OPINION

LESLIE B. YATES, Justice.

Appellant Harry Robert Burton was convicted of robbing a bank and sentenced to thirty years' confinement and a $5,000 fine. In nine issues, appellant challenges the trial court's admission of evidence of other bank robberies appellant committed and claims the evidence is legally and factually insufficient to support his conviction. We affirm.

## I. BACKGROUND

On October 18, 2004, Sarah Clarke was working as a teller at a Chase Bank branch in Houston when appellant, who was wearing a baseball cap and sunglasses, approached her and handed her a note demanding money. Though appellant took the note with him and it was never recovered, Clarke testified that the note specifically demanded fifty dollar bills and said, "This is a holdup. Quiet, please. This is not a joke." Clarke was initially confused and handed appellant one fifty dollar bill. When appellant then demanded "all of them," Clarke realized she was being robbed. She pushed the silent panic button, and fearful that appellant might have a weapon and hurt her, Clarke turned over all of her fifties. Appellant then demanded one hundred dollar bills, which she gave him, for a total of about $4,900. No security guard was present, and appellant was able to escape before police responded to the alarm, though the robbery was captured by a surveillance camera.

About two months later, appellant voluntarily walked into the Houston Police Department's Robbery Division, stating that he wanted to talk to someone about at least three recent bank robberies in the Houston area that he had committed. Appellant met with Investigator Joe Shockley. Appellant said he could not remember the exact details or locations of the robberies because he had "been doing drugs pretty heavily," but he gave some information about how he "usually" robs a bank, including:

1. He studies the banks in advance "to make sure they do not have police officers in them."

2. He targets young tellers because "an older person will be more protective of the money while a young person will be more protective of the older employee and will give up the money to get me out of there."

3. He wears disguises, including items such as "glasses, caps, jackets and shirts," which he throws away after the robbery.

4. He gives the tellers "a note instructing them that it was a robbery and I verbally announced the robbery while they were reading the note," which he had written before entering the bank.

When Investigator Shockley, who had investigated the Chase Bank robbery, first saw appellant, he recognized appellant as the man he had seen on the surveillance video of the robbery. He prepared a photo line-up with appellant and five others and showed it to Clarke, who identified appellant as the robber.

Based upon the information appellant provided in his statement to Investigator Shockley, appellant became a suspect in two other Houston area bank robberies at branches of Frost Bank and Washington Mutual Bank.[1] Neither bank had onsite security, both robbed tellers were young women, and the robber in both cases wore

---

1. Because appellant was unable to provide specific details about the dates and locations of the robberies that he confessed to Investigator Shockley, it is unclear whether the Frost Bank and Washington Mutual robberies are included or are in addition to those others.

a hat and sunglasses and gave the tellers a robbery note.

After determining that appellant had made identity an issue in the trial, the trial court admitted appellant's statement to Investigator Shockley describing his recent bank robberies and evidence regarding the robberies at Frost Bank and Washington Mutual. The jury convicted appellant, and he now appeals.

## II. ANALYSIS

### A. Extraneous Offenses

■ In issues one through seven, appellant claims the trial court erred in admitting his statement to Investigator Shockley regarding his prior bank robberies and the testimony regarding the Frost Bank and Washington Mutual robberies because the extraneous offenses are irrelevant and unfairly prejudicial. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000). We will reverse a trial court's decision to admit or exclude evidence only when that decision falls outside the zone of reasonable disagreement. *Id.*

#### 1. Relevance

■ Rule 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX.R. EVID. 404(b). Such evidence may be admissible for other purposes, such as showing identity. *Id.; Page v. State,* 213 S.W.3d 332, 336 (Tex.Crim.

App.2006). However, an extraneous offense may be admitted to show identity only when identity is an issue in the case. *Page,* 213 S.W.3d at 336.

■ In his brief, appellant argues that he did not sufficiently raise identity as an issue to allow admission of extraneous offenses to show identity. After appellant cross-examined Clarke, the State moved to admit evidence of the extraneous offenses, arguing that appellant had placed identity at issue through his cross-examination. Appellant did not dispute this assertion and never argued to the trial court that he had not placed identity at issue.[2] Thus, he cannot make this argument to us for the first time on appeal. *See* TEX.R.APP. P. 33.1(a); *Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App.2002).

Nevertheless, even assuming appellant had preserved error on this complaint, we conclude appellant raised identity as an issue. Clarke testified on direct examination, after she had identified appellant in court, that she had chosen him out of the photo lineup presented by Investigator Shockley. Clarke was only eighty-five percent sure appellant was the robber until she saw him in person on the day of trial, when she became "very sure." On cross-examination, appellant's attorney clarified that when Clarke first saw the photo lineup, she told Investigator Shockley that appellant was "without a doubt" the robber but that her certainty in the identification had decreased over time. His questioning also suggested that the description of the robber she gave the

2. Appellant objected that admitting the extraneous offenses would violate Rule 404(b) because they were being offered to show character conformity and Rule 403 because they are unfairly prejudicial. Appellant raises these same arguments on appeal, and we address each of them below. Appellant also argued to the trial court, and in his brief on appeal, that his statement to Investigator Shockley was not relevant as substantive evidence of guilt on the charged offense because the statement was too vague to specifically connect him to the charged offense. We need not address this argument because we determine, as discussed below, that the extraneous offenses were otherwise relevant under Rule 404(b) to prove identity.

police did not match appellant and that the photo lineup was suggestive because appellant's picture was unique and thus attracted her attention. Appellant's attorney's questioning also challenged Clarke's memory by pointing out discrepancies between the information she gave police regarding the exact time of the robbery and the amount of money taken and information later confirmed in the investigation. Cross-examination also revealed that other tellers in the bank had identified others as the robber when shown the photo lineup. Even though after cross-examination Clarke still maintained that she was "confident" of her identification, appellant's attempted impeachment of her identification was sufficient to place identity at issue.[3] *See Page,* 213 S.W.3d at 336 (noting that issue of identity may be raised by cross-examination and that questioning complainant about defendant's weight was sufficient to raise identity); *see also Page v. State,* 137 S.W.3d 75, 79 (Tex.Crim.App. 2004) ("That the impeachment was not particularly damaging or effective in light of all the evidence presented is not the question. The question is whether impeachment occurred that raised the issue of identity. If so, Rule 404(b) permits the introduction of extraneous offenses that are relevant to the issue of identity.").

 Even when identity is an issue in the case, extraneous offenses are admissible to show identity only if the charged offense and the extraneous offense are so similar "that the offenses illustrate the defendant's 'distinctive and idiosyncratic

manner of committing criminal acts.'" *Page,* 213 S.W.3d at 336 (quoting *Martin v. State,* 173 S.W.3d 463, 468 (Tex.Crim. App.2005)). The common characteristics must be so unusual as to act as the defendant's "signature" or "handiwork." *See id.; Lane v. State,* 933 S.W.2d 504, 519 (Tex.Crim.App.1996). We must compare the circumstances of the charged offense and the extraneous offenses to determine if they are sufficiently similar to make the extraneous offenses relevant to the issue of identity. *See Page,* 213 S.W.3d at ·336; *Lane,* 933 S.W.2d at 519; *Prince v. State,* 192 S.W.3d 49, 54 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd).

A comparison between the charged offense and the extraneous offenses shows a high degree of similarity. In his statement to Investigator Shockley, although he could not recall the exact details of his recent Houston-area robberies, appellant outlined his usual method of robbing banks. Those details closely align with the method used to rob Frost Bank and Washington Mutual as well as the bank in the charged offense, Chase Bank, in that the banks all had no onsite security, the robbed tellers were young, and the robber wore a hat and sunglasses and made the robbery demand initially with a note. Appellant highlights some differences, including variations in clothing worn (other than hats and sunglasses), the use of a toy gun in one, and the taking of smaller denominations of· bills in the Frost Bank and Washington Mutual robberies.[4] Although there are some differences between the

---

**3.** Appellant's intent to place identity at issue is further demonstrated by the subsequent questioning of Investigator Shockley suggesting that the photo lineup was suggestive, detailing the other tellers' differing identifications, highlighting the differences between Clarke's description and appellant's physical appearance, and establishing that eyewitnesses' perceptions are often inaccurate. Moreover, appellant's counsel emphasized

these points in closing and stated that although he believed Clarke to be an honest person, her identification could still be mistaken.

**4.** Clarke testified that in her opinion, appellant's demand for only larger denominations signified familiarity with bank procedure because "bait traps" were not included with the larger denominations.

various offenses, these differences do not necessarily outweigh the similarities and thus destroy the probative value of the extraneous offenses in proving identity. *See Page*, 213 S.W.3d at 338 (stating that Texas law "does not require extraneous-offense evidence to be completely identical to the charged offense to be admissible to prove identity" and noting that despite some differences, the similarities there showed a distinctive manner of committing a crime); *see also Lane*, 933 S.W.2d at 519; *Prince*, 192 S.W.3d at 54. We conclude the trial court did not abuse its discretion in determining that the similarities between the charged offense and the extraneous offenses are sufficient to show appellant's idiosyncratic or signature style of bank robbery.

### 2. Unfair Prejudice

■ Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Appellant argues that even if the extraneous offenses were admissible under Rule 404(b), they should have been excluded as unfairly prejudicial under Rule 403. He contends that because of the differences between the extraneous offenses and the charged offense, the extraneous offenses were not very probative, and he argues that the State did not have a strong need for the evidence because his attempted impeachment of Clarke's identification was ineffective. We disagree. As we have already discussed, the charged and extraneous offenses were identical in several key re-spects and thus highly probative on the issue of identity. *See Lane*, 933 S.W.2d at 520 (finding that many similarities between charged and extraneous offenses made extraneous offense evidence highly probative under Rule 403). Moreover, although Clarke never wavered in her identification, appellant attacked the credibility of her identification on many levels, both in his cross-examination of Clarke and Investigator Shockley. He also argued to the jury that Clarke need not have been dishonest for her identification to have been incorrect, thus attempting to undermine Clarke's insistence on the correctness of the identification. Thus, the State needed the extraneous offenses to help establish appellant's identity as the robber. *See Johnson v. State*, 68 S.W.3d 644, 651–52 (Tex.Crim.App.2002) (finding strong need for extraneous offenses to establish identity, even when State had many types of other identity evidence, when defendant challenged the probative value of that evidence). Finally, the trial court's repeated limiting instruction minimized any risk that the jury could have considered the extraneous offenses for an improper purpose.[5] *See Lane*, 933 S.W.2d at 520; *Prince*, 192 S.W.3d at 56. For these reasons, we conclude the trial court did not abuse its discretion in determining that the probative value of the extraneous offenses outweighed any prejudicial effect.

Having determined that the trial court did not err in concluding that the extraneous offenses were relevant and admissible under Rule 404(b) and not unfairly preju-

---

**5.** In the jury charge and during the trial before the testimony of each of the eight witnesses anticipated to testify regarding the extraneous offenses, the trial court gave the following limiting instruction:

You are instructed that if there is any testimony before you in this case regarding the Defendant having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such offenses if any were committed. And even then, you may only consider the same in determining motive, modus operandi, and/or identity of the Defendant, if any, in connection with the offense, if any, alleged against him in the indictment of this case and for no other purpose.

dicial under Rule 403, we overrule appellant's first seven issues.

## B. Sufficiency of the Evidence

In his eighth and ninth issues, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. In evaluating a legal sufficiency claim attacking a jury's finding of guilt, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). We do not ask whether we believe the evidence at trial established guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Rather, we determine only whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex.Crim.App.2000). In our review, we accord great deference " 'to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim.App.1996) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781). In conducting a factual sufficiency review of the jury's determination, we do not view the evidence "in the light most favorable to the prosecution." *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). Rather, we look at all evidence in a neutral light and will reverse only if (1) the evidence is so weak that the finding seems clearly wrong and manifestly unjust or (2) considering conflicting evidence, the finding, though legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *See Watson v. State*, 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006). However, it is not enough that we may harbor a subjective level of reasonable doubt to overturn a finding that is founded on legally sufficient evidence. *See id.* at 417. We cannot conclude that a finding is "clearly

wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted differently had we been the fact finder. *See id.* Nor can we declare that a conflict in the evidence justifies a new trial simply because we may disagree with the fact finder's resolution of that conflict. *See id.* Rather, before ordering a new trial, we must first be able to say, with some objective basis in the record, that the great weight and preponderance of the (albeit legally sufficient) evidence contradicts the verdict. *See id.*

An individual commits a robbery if, in the course of committing a theft, he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 2003). Appellant argues the evidence is legally and factually insufficient to show that he intentionally acted to threaten or place Clarke in fear of imminent bodily injury or death. He emphasizes that he neither used a deadly weapon nor used the word "robbery" in the note or when speaking to Clarke. This, according to appellant, in combination with the presence of other people in the bank, is evidence of his intent to be non-threatening. We disagree.

Proving robbery by showing the defendant placed another in fear does not require an actual threat. *See Childress v. State*, 917 S.W.2d 489, 494 (Tex.App.-Houston [14th Dist.] 1996, no pet.) ("The fact-finder may conclude that an individual was 'placed in fear,' in circumstances where no actual (verbal) threats were conveyed by the accused."); *Williams v. State*, 827 S.W.2d 614, 616 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (noting that a fact finder can determine that an individual perceived fear when accused made no actual threats). It is undisputed that Clarke feared appellant might have a weapon and might injure or kill her during

the robbery. We must look to the circumstances surrounding the robbery to determine if appellant's conduct reasonably placed Clarke in fear. *See Welch v. State,* 880 S.W.2d 225, 226 (Tex.App.-Austin 1994, no pet.) ("The appellate court must ask if the words and conduct of the accused were sufficient to place a reasonable person in the victim's circumstances in fear of imminent bodily injury or death."); *Wilmeth v. State,* 808 S.W.2d 703, 706 (Tex.App.-Tyler 1991, no pet.) (determining whether defendant's conduct was such that in "reason and common experience" the victim would feel fear and be likely to part with his property against his will). Appellant entered a bank in a disguise and handed Clarke a note stating that this is a "holdup" and demanding money.[6] The word "holdup" is generally understood to be a robbery at gunpoint. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 552 (10th ed.2002) ("a robbery carried out at gunpoint"); *see also* BLACK'S LAW DICTIONARY 1454 (8th ed.2004) (noting that "holdup" is also termed a "stickup," which is "[a]n armed robbery in which the victim is threatened by the use of weapons").

We conclude that appellant's entering a bank in a disguise, informing Clarke that this is a "holdup," and demanding money reasonably placed Clarke in fear of bodily injury. *See Welch,* 880 S.W.2d at 226–27 (finding evidence sufficient to support robbery conviction when appellant disguised his clothing, gave bank teller a robbery demand note, and reached to his pocket to pull out what teller initially thought was a gun but turned out to be a paper bag for holding money); *see also United States v. Gilmore,* 282 F.3d 398, 402 (6th Cir.2002) ("A review of the case law reveals that

making a written or verbal demand for money to a teller is a common means of successfully robbing banks. Demands for money amount to intimidation because they carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee[s] may result."); *United States v. Clark,* 227 F.3d 771, 773–75 (7th Cir.2000) (finding that even though robber was polite and noncombative and did not use a weapon, his act of stating to bank teller that this was a "holdup" reasonably caused teller to feel threatened and fear for her safety). Accordingly, we overrule appellant's eighth and ninth issues.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

---

6. Appellant argues that because the robbery note was never recovered and the jury could not view it, the jury could not gauge its threatening effect. Clarke testified as to the contents of the note, and her testimony was sufficient to allow the jury to assess the note.

*Cf. Carter v. State,* 946 S.W.2d 507, 509–11 (Tex. App.-Houston [14th Dist.] 1997, pet. ref'd) (holding that even though gun was never recovered, robbery victim's testimony was sufficient to prove defendant used a firearm).