

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00145-CR

WILLIE CHARLES PRICE, JR.                                APPELLANT
A/K/A WILLIE C. PRICE, JR.

V.

THE STATE OF TEXAS                                      STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## OPINION

----------

A jury convicted appellant Willie Charles Price, Jr. a/k/a Willie C. Price, Jr. of aggravated robbery.[1] At appellant's trial, victims of three similar robberies identified him as the man who had robbed them. In a sole point, appellant contends that the trial court erred by allowing evidence about these extraneous offenses. We affirm.

---

[1]*See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2011).

## Background Facts

One early morning in the summer of 2009, a man entered a Fort Worth convenience store carrying a crowbar and wearing black clothing and a towel over his head. While holding the crowbar in an upright position, the man ordered the store's clerk, Ray Kilgore, to give him money from a cash register. Kilgore gave the man the money, and the man ran away. Kilgore identified appellant as the robber through a photo lineup.

A grand jury indicted appellant with aggravated robbery. The parties filed various pretrial documents (including the State's notice of its intent to introduce evidence of other crimes, wrongs, or acts that appellant had committed), and appellant pled not guilty. At trial, Kilgore identified appellant as the man who had committed the robbery, and Kilgore said that he had also seen appellant in the store earlier that evening. A manager at the store at the time of the robbery, Charlene Bradshaw, viewed a recording of the robbery and also identified appellant at trial as a man she had seen in the store earlier that evening.

In addition to presenting testimony from Kilgore and Bradshaw, the State called three witnesses who identified appellant as the perpetrator of separate but similar offenses in each of the convenience stores that they worked in. Defense counsel objected to this testimony under rules of evidence 403 and 404(b).[2] The trial court overruled the objection and admitted testimony regarding the

---

[2]*See* Tex. R. Evid. 403, 404(b).

extraneous offenses. The court gave the jury a limiting instruction to only consider the extraneous offenses for identity purposes. The jury returned a conviction for aggravated robbery and, after hearing evidence concerning appellant's punishment, assessed twenty years' confinement. Appellant filed notice of this appeal.

## The Admission of the Extraneous Offenses

In his sole point, appellant contends that the trial court abused its discretion by admitting evidence of the extraneous offenses. We review the trial court's admission of evidence under an abuse of discretion standard. *Allen v. State*, 202 S.W.3d 364, 367 (Tex. App.—Fort Worth 2006, pet. ref'd) (op. on reh'g); *see Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex. Crim. App. 1991) (op. on reh'g). Under this standard, the trial court's ruling will be upheld as long as it falls within the "zone of reasonable disagreement." *Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.); *Karnes v. State*, 127 S.W.3d 184, 189 (Tex. App.—Fort Worth 2003, pet. ref'd), *cert. denied*, 129 S. Ct. 2391 (2009).

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as . . . identity . . . ." Tex. R. Evid. 404(b); *see Montgomery*, 810 S.W.2d at 387–88; *see also Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (explaining that, generally, the defendant is to be tried only for the offense charged, not for any other crimes),

3

*cert. denied*, 130 S. Ct. 53 (2009). The State, as the proponent of extraneous offense evidence, bears the burden of showing admissibility. *Russell v. State*, 113 S.W.3d 530, 535 (Tex. App.—Fort Worth 2003, pet. ref'd). "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

For an extraneous offense to be admissible to show identity, identity must be raised as an issue in the case. *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996) (citing *Moore v. State*, 700 S.W.2d 193, 201 (Tex. Crim. App. 1985), *cert. denied*, 474 U.S. 1113 (1986)). A defendant may raise the issue of identity during cross-examination of the State's witnesses. *Id.*; *see Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004) ("Identity can be raised by defense cross-examination, such as when the identifying witness is impeached on a material detail of the identification."); *see also Burton v. State*, 230 S.W.3d 846, 849–50 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that the defendant raised identity as an issue in the case by questioning the certainty of the victim's identification). In *Page*, the court of criminal appeals determined that the defendant raised the issue of identity because questioning of the State's witness called into doubt either "her capacity to observe (i.e., she was mistaken)

4

or her truthfulness (i.e., she was lying), or both, [and] the questions implied that the identification of appellant was not trustworthy."  137 S.W.3d at 78.[3]

Appellant's trial counsel asked questions during his cross-examination of the State's witnesses in a manner that obviously emphasized the issue of identity.[4]  Counsel repeatedly asked Kilgore about whether he could clearly see appellant's face at the time of the robbery, and counsel also asked Kilgore several other questions that sought to impugn Kilgore's identification of appellant:

_____

[3]Even when identity is raised as an issue, extraneous offenses are usually admissible only if the offenses are so similar to the charged offense as to illustrate the defendant's distinctive and idiosyncratic manner of committing criminal acts.  *See Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *Owens v. State*, 827 S.W.2d 911, 914 (Tex. Crim. App. 1992); *Karnes*, 127 S.W.3d at 190; *see also Segundo*, 270 S.W.3d at 88 (explaining that the common characteristics to show a link between the extraneous and charged offenses may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements that mark both crimes as having been committed by the same person).  The dissenting opinion, however, fails to recognize that in appellant's concise brief, he does not contend that the extraneous offenses that the trial court admitted are not sufficiently similar to the offense in this case to show a connection between all of the crimes.  We note that the three witnesses of the extraneous offenses testified that all of the offenses were committed by a black man and occurred in convenience stores during early morning hours of dates near the date of the offense at issue here.  All were committed by a man with a towel over his head who was carrying a weapon (in two of the three extraneous offenses, the weapon was a crow bar or steel pipe).  All three witnesses identified appellant at trial as the perpetrator of the offenses.

[4]As most cross-examinations would, appellant's cross-examinations of the State's witnesses related to factual matters that were similar to those elicited during direct examination.  Appellant's counsel, however, did not "only repeat[] the questions raised by the State."  Dissenting Op. at 2.  The manner of the State's questioning was focused on ultimately producing a positive identification of appellant as the robber.  Appellant's counsel's questioning, as described below, was focused on creating doubt about that identification.

Q  Okay.  And I believe you testified that you were briefly face to face with the man, and I think that initially the man comes in and walks directly up to you.  Is that when you were face to face with him?

A  Yeah.

Q  All right.  And then you said that you *didn't want to really take a look at him* because you were afraid that it might turn out badly for you; is that correct?

A  Yes, when he was up close.

Q  Okay.  So you were -- really you were *kind of trying not to look at him*, would that be a fair assessment?

A  Yeah, when he was up close.

Q  Okay.  And then *after that you were trying not to look at him*, would that be accurate?

A  Yes.

Q  All right.  So pretty much the time that you got to view him right up close was that period of time when he walks up right to you where you're down there working on the computer, right?

A  Yes.

Q  Okay.  And after that you were *really kind of trying not to look at him*; is that right?

A   Yes.

. . . .

Q  Okay.  And, in fact, on this video though that we just saw that lasted several minutes there were several people within that brief period of time that had on black clothing other than the robber; is that correct?

A  Yes.

Q  Okay.  And I believe that also on that video we saw several African American men that had a bald head; is that right?

6

A Yeah.

Q All right. And so essentially there were lots of people that came in there wearing black clothing with shaved heads, would that be accurate to say?

A Not really, it wouldn't.

. . . .

Q Okay. Well, my question is, was what stated on the 911 tape was that I couldn't see his face? You heard that?

A Yeah.[5] [Emphasis added.]

Counsel also repeatedly asked Bradshaw about how certain her identification was because while she saw appellant's face when he entered the store to ask for water earlier on the evening in question, she only saw the video of appellant's second entry in the store (when he committed the aggravated robbery), and the video did not show appellant's full face. Counsel also questioned whether Bradshaw's identification was based on appellant's facial features or simply his clothing. Furthermore, counsel asked the detective who prepared the photo lineup that Bradshaw and Kilgore viewed whether the lineup was unduly suggestive and whether Kilgore had initially struggled to identify appellant in the lineup.

Thus, as in *Page*, the question of whether defense counsel's cross-examinations of these witnesses raised the issue of identity "may best be

_____

[5]In contrast to these questions, the State asked Kilgore whether he had been able to get a "clear" and "good" look at appellant, and Kilgore testified that he had.

7

answered with another question: If it was not about identity, what was it about?" 137 S.W.3d at 79. Finally, we note that appellant's counsel also made a direct attack on the identification of appellant in his closing statements. He addressed identification as his first argument and said, "Now, we all know people get misidentified all the time." Later, counsel told the jury, "I would trust that you weigh the evidence carefully, and that when you come back, you will have reasonable doubt as to the identity of the person on this video and the testimony of those witnesses and find Mr. Price not guilty."

For these reasons, we conclude that the trial court did not abuse its discretion by deciding that the extraneous offenses were admissible to show appellant's identity under rule 404(b). *See* Tex. R. Evid. 404(b); *Allen*, 202 S.W.3d at 367.

Appellant also asserts (without providing any significant analysis) that the trial court should have excluded evidence regarding the extraneous offenses under rule 403.[6] *See* Tex. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."). The admission

---

[6]Appellant objected to the evidence under rule 403 at trial. The extent of appellant's argument on appeal regarding rule 403 states, "Under Texas Rule[] of Evidence 403 . . . , the admission of not one, but three extraneous robberies was error and effectively, despite the trial Court's [limiting] instruction, presented character conformity evidence and substantially prejudiced and harmed [a]ppellant."

8

of extraneous offenses must not be substantially more prejudicial than probative. *See id.*; *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). The probative value of extraneous offenses is low when the offenses support only noncompelling, undisputed evidence that has already been submitted. *Montgomery*, 810 S.W.2d at 390.

As we explained in *Alami*,

> Once appellant makes a rule 403 objection, the trial court must weigh the probative value of the evidence to determine if it is substantially outweighed by its potential for unfair prejudice. A rule 403 balancing test includes the following factors: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. The rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence is more probative than prejudicial.

333 S.W.3d at 889 (citations omitted); *see Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd) ("Unfair prejudice arises from evidence that has an undue tendency to suggest that a decision be made on an improper basis, commonly an emotional one.").

At trial, the State presented a surveillance tape of the robbery at issue in this case, but the towel over appellant's head hid his face from view. Appellant challenged Kilgore's and Bradshaw's identifications of him as the robber during

their testimony and, eventually, in his closing argument. Thus, the testimony of other victims of the extraneous crimes, who identified appellant as the man who had also robbed them in a quite similar way to how he robbed Kilgore, had substantial probative value. The evidence about the extraneous offenses focused, rather than distracted, the jury on the main issue in the case: whether appellant was the person who committed the crime against Kilgore. *See Alami*, 333 S.W.3d at 889. Also, the limiting instruction that the trial court gave with the testimony helped to ensure that the jury would not be confused by the evidence or use it for an improper purpose. *See Burton*, 230 S.W.3d at 851. We hold that the trial court did not abuse its discretion by following the presumption to admit relevant evidence and by determining that the evidence of the extraneous offenses was not substantially more unfairly prejudicial than probative. *See* Tex. R. Evid. 403; *Allen*, 202 S.W.3d at 367.

For all of these reasons, we overrule appellant's only point.

10

**Conclusion**

Having overruled appellant's point, we affirm the trial court's judgment.

                                        TERRIE LIVINGSTON
                                        CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT, J.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  August 25, 2011



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00145-CR

---

WILLIE CHARLES PRICE, JR.                                        APPELLANT
A/K/A WILLIE C. PRICE, JR.

V.

THE STATE OF TEXAS                                                    STATE

\-\-\-\-\-\-\-\-\-\-\-

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

\-\-\-\-\-\-\-\-\-\-\-

## DISSENTING OPINION

\-\-\-\-\-\-\-\-\-\-

Respectfully, I write separately because I do not understand the majority opinion to have addressed the issues raised by Appellant.

Appellant argues that the trial court erred by admitting evidence of extraneous offenses because Appellant did not place identity in issue beyond the degree to which the State placed identity in issue. The majority addresses Appellant's point by reiterating the questions Appellant asked regarding

witnesses' ability to view the actor and questions regarding the photo lineup. Appellant, however, does not argue that he did not mention those matters. Appellant argues that he did not go beyond the questions raised by the State on direct examination. That is, Appellant argues that the State cannot raise the issue of identity in order to make extraneous offenses admissible to prove identity, and a defendant who only repeats the questions raised by the State does not open the door to make admissible evidence of extraneous offenses.

The majority does not explain the extent to which the State raised the issue of identity, nor does the majority explain how Appellant went beyond the State's questioning the bases of witnesses' identification in order to open the door to extraneous offenses. The majority also does not explain, except for a mention in a footnote, how the extraneous offense evidence resolved any questions of identity.

As the Texas Court of Criminal Appeals has discussed,

> The general rule is that the defendant is to be tried only for the offense charged, not for any other crimes or for being a criminal generally. However, evidence of extraneous acts of misconduct may be admissible if (1) the uncharged act is relevant to a material issue in the case, and (2) the probative value of that evidence is not significantly outweighed by its prejudicial effect. Because the propensity to commit crimes is not a material fact in a criminal case, Rule 404(b) explicitly prohibits the admission of uncharged acts to prove conduct in conformity with a bad character.

> One of the main rationales for admitting extraneous-offense evidence is to prove the identity of the offender. Here, the theory of relevancy is usually that of *modus operandi* in which the pattern and characteristics of the charged crime and the uncharged misconduct are so distinctively similar that they constitute a "signature." Usually,

2

it is the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or *modus operandi* of a single individual. No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person. But if the similarities are "generic," *i.e.*, typical to this type of crime, they will not constitute a "signature" crime. Sometimes, however, the "signature" is one unique characteristic. For example, suppose that three bank robberies are committed over a four-year period in different cities in which the robber used an antique silver crossbow. This scenario is so unusual that it is highly likely that each robbery was committed by the same person using the same antique silver crossbow. This is "the mark of Zorro" mode of proving identity; it is a remarkably unusual fact, in which a single detail suffices to establish identity.[1]

The burden of showing admissibility rests upon the proponent of the evidence of extraneous offenses.[2] As the Texas Court of Criminal Appeals has explained,

In *Jones*, we concluded that, even though the state had the burden of proving guilty intent and identity, the state could not permissibly use extraneous offenses as circumstantial evidence on these issues where the state had uncontroverted direct evidence on the issue of identity and guilty intent could be inferred from the act itself. In that type of situation, the prejudicial effect of the evidence far outweighs its relevance to any issue in the case; and the evidence of the extraneous offense serves only to establish the accused's bad character.[3]

Here, Appellant argues that the State delved into the witnesses' ability to observe the actor and the degree to which their testimony regarding identification had

---

[1]*Segundo v. State*, 270 S.W.3d 79, 87–88 (Tex. Crim. App. 2008) (footnotes omitted), *cert. denied*, 130 S. Ct. 53 (2009).

[2]*Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (op. on reh'g).

[3]*Albrecht v. State*, 486 S.W.2d 97, 101 (Tex. Crim. App. 1972).

been influenced. This is what a good lawyer does. If the defense did nothing but repeat what the State had already proved, how did Appellant challenge the witnesses' identification and thereby open the door for proof of extraneous offenses? I do not understand how the majority opinion explains the answer to this question. If Appellant did so challenge and undermine the validity of the witnesses' identification, how did the State as proponent of the evidence of the extraneous offenses satisfy its burden to show admissibility?

True, the majority mentions in a footnote that the offenses at trial and the extraneous offenses were all committed by a black man.[4] They were committed in convenience stores during early morning hours of "dates near the date of the offense at issue here."[5] So far, it is difficult to perceive how the majority construes this evidence as a signature motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The majority mentions a towel on Appellant's head[6] and on the man's head in the extraneous offenses but does not provide any discussion.[7] Additionally, Appellant carried a crowbar. The majority mentions in the footnote that the man or men in the

---

[4]Majority op. at 5 n.3.

[5]*Id.*

[6]*Id.* at 2.

[7]*Id.* at 5–6 n.3.

4

extraneous offenses carried a weapon.[8]  In one offense, the perpetrator carried a knife, in one, he carried a steel pipe, and in one, he carried a crowbar.

"Faced with an objection, the proponent of such evidence must satisfy the trial court that the extraneous act has relevance apart from its tendency to prove character conformity."[9]  Except for the aside in the footnote, I do not understand how the majority opinion addresses whether the State satisfied this obligation.

For these reasons, I cannot join the majority opinion.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  August 25, 2011

---

[8]*Id*.

[9]*Feldman v. State*, 71 S.W.3d 738, 754 (Tex. Crim. App. 2002) (citing *Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997), and *McFarland v. State*, 845 S.W.2d 824, 837–38 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 963 (1993), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994)).