

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00059-CR

GREGG WESLEY MACINTOSH                                              APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In three points, appellant Gregg Wesley Macintosh[2] appeals his first-degree felony conviction and his life sentence for the continuous sexual abuse of young children.[3]  Appellant contends that his conviction violates constitutional

---

[1]*See* Tex. R. App. P. 47.4.

[2]Some parts of the record spell appellant's last name as "MacIntosh."

[3]*See* Tex. Penal Code Ann. § 21.02(b), (h) (West Supp. 2013).

provisions requiring unanimous verdicts, that the trial court erred by admitting evidence concerning an extraneous offense, and that the trial court erred by denying his motion for mistrial that was based on an allegedly improper closing argument by the State. We affirm.

### Background Facts

Only the State called witnesses during the phase of appellant's trial in which the jury determined his guilt. The following facts are based on the testimony from those witnesses.

Appellant is the father of Beth and Christopher.[4] While appellant and his children lived in a four-bedroom house in Arlington, Beth became friends with Cara, who lived next door. Cara often went to Beth's house and spent the night there. Beth and Cara eventually became friends with Danielle, who also regularly went to Beth's house and stayed overnight.[5] All three girls went to school together and were in the same grade.

Although Beth and Christopher had their own rooms, they often slept in other parts of the house, including on a living room couch along with appellant.

---

[4]To protect the anonymity of the children involved in this case, we will refer to them and to other witnesses by using pseudonyms. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[5]One witness described Beth, Cara, and Danielle as being "thick as thieves" and "very, very close." The girls were approximately the same age. Sometimes, Courtney and Beth would tease and gang up on Danielle.

2

No one regularly slept in the master bedroom. When Beth's friends stayed overnight, they sometimes fell asleep in one bed located in Beth's room.

Some nights, Christopher would fall asleep on the couch and wake up to find Cara or Danielle lying on the couch with appellant even though they had not been there before he fell asleep. Cara confirmed that several times, she fell asleep in Beth's room and woke up downstairs on the couch, close to appellant and, occasionally, Christopher.

Appellant often took the girls to see horses that he had bought for them, to eat at restaurants, and to play at arcades and amusement parks, where he had bought them season passes. He also gave them money and bought them clothes, electronics, and bicycles. The girls called appellant "Daddy"; Cara testified that appellant had asked her to do so.

One night in February 2012, when Danielle was almost ten years old, she sent a text message to her mother, Lacy. Early the next morning, Lacy went to appellant's house so that she could take Danielle and Beth to school and talk to them. Danielle told Lacy that appellant had been touching her inappropriately and that this behavior had "been going on for a long time." Specifically, Danielle said that on numerous occasions, appellant had put his hands and his lips on her private parts. Lacy dropped the girls off at school and went to her mother's house; she was shaking, upset, and "just panic stricken." Lacy confronted appellant about what Danielle had said. He "denied it all," begged Lacy to not call the police, and offered to surrender possession of his children to her.

3

Lacy called the police. Soon thereafter, Cara, Danielle, Christopher, and Beth gave forensic interviews at Alliance for Children, a child advocacy center. At Danielle's and Cara's interviews, they detailed a long pattern of sexual abuse against them by appellant. Danielle went to a medical center for a sexual assault exam and told a nurse that more than once, appellant had touched her genital area and chest with his hands. She also told the nurse that appellant had licked her genital area.

A grand jury indicted appellant with committing the continuous sexual abuse of young children. The indictment alleged that during a period that was thirty or more days in duration (from May 2010 through February 2012), appellant had committed two or more acts of sexual abuse against Danielle and Cara, who were younger than fourteen years old.

Appellant retained counsel and filed several pretrial motions, including a motion to quash the indictment. In the motion to quash, he contended that the statute under which he had been charged—section 21.02 of the penal code—was unconstitutional because it violated the requirement of unanimous jury verdicts. Specifically, appellant contended in part,

> The charge . . . under section 21.02 consists of at least two predicate offenses of indecency with a child and aggravated sexual assault of a child, which were part of the more global crime of continuous sexual abuse. Thus, section 21.02 permits a jury to convict a defendant without unanimous agreement that the defendant committed any discrete culpable act, which is unconstitutional.

4

The trial court denied appellant's motion to quash. Appellant pled not guilty. At trial, Danielle and Cara collectively testified that on many occasions, appellant had touched their bodies, including their private parts, with his hand, tongue, or a vibrator either over or under their clothes.[6]

Upon receiving all of the evidence and the parties' arguments, the jury found appellant guilty. The jury then heard more evidence that concerned appellant's punishment and assessed confinement for life.[7] The trial court sentenced appellant accordingly, and he brought this appeal.

**The Denial of Appellant's Motion to Quash**

In his first point, appellant contends that section 21.02 of the penal code is unconstitutional and that the trial court therefore erred by denying his motion to quash. Under section 21.02, a person commits an offense if

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse,[8] regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

---

[6]Upon executing a search warrant, an Arlington police officer found a vibrator in appellant's house.

[7]During the punishment phase of the trial, the jury heard several more witnesses (other than Danielle or Cara), including Beth, each testify that appellant had sexually abused them when they were younger.

[8]The statute defines acts of sexual abuse by incorporating other sections of the penal code. Tex. Penal Code Ann. § 21.02(c).

Tex. Penal Code Ann. § 21.02(b).

Appellant argues that section 21.02 is unconstitutional because it did not require the jury to unanimously agree on which acts of sexual abuse appellant committed or when he committed them. The legislature has expressly stated that under section 21.02, jurors "are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." *Id.* § 21.02(d). Conforming to that legislative intent, Texas courts, including our own, have authoritatively ruled against appellant's position and upheld section 21.02's federal and state constitutionality. *See Pollock v. State*, 405 S.W.3d 396, 405 (Tex. App.—Fort Worth 2013, no pet.) ("[T]his court and our sister courts have held that [section 21.02] does not violate the state constitutional right to jury unanimity."); *Lewis v. State*, No. 02-10-00004-CR, 2011 WL 2755469, at *6 (Tex. App.—Fort Worth July 14, 2011, pet. ref'd) (mem. op., not designated for publication) ("[Section 21.02] does not violate any constitutional requirements for juror unanimity, and the trial court did not abuse its discretion by overruling Appellant's motion to dismiss or by not quashing the indictment."); *see also Fulmer v. State*, 401 S.W.3d 305, 313 (Tex. App.—San Antonio, pet. ref'd), *cert. denied*, 134 S. Ct. 436 (2013); *McMillian v. State*, 388 S.W.3d 866, 871–73 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Appellant's argument does not persuade us to abandon our precedent of *Pollock* and *Lewis*, in which we rejected identical contentions. Thus, based on the rationale expressed in those cases, we hold that appellant's prosecution

under section 21.02 did not violate his constitutional right to a unanimous verdict, and we conclude that the trial court did not err by denying his motion to quash. *See Pollock*, 405 S.W.3d at 405; *Lewis*, 2011 WL 2755469, at *6.  We overrule appellant's first point.

**The Admission of Evidence Concerning an Extraneous Offense**

In his second point, appellant contends that the trial court abused its discretion by admitting evidence of an extraneous offense during the guilt phase of his trial.  "The admission of evidence is a matter within the discretion of the trial court.  Absent an abuse of discretion, we will not disturb a trial court's ruling on the admissibility of extraneous offense evidence." *Hill v. State*, 303 S.W.3d 863, 876 (Tex. App.—Fort Worth 2009, pet. ref'd) (citation omitted).  As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we must uphold the ruling. *Id.*; *see Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *Price v. State*, 351 S.W.3d 148, 150 (Tex. App.—Fort Worth 2011, pet. ref'd).

The State, as the proponent for extraneous offense evidence, has the burden of showing admissibility. *Price*, 351 S.W.3d at 151.  We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Bradford v. State*, 178 S.W.3d 875, 878 (Tex. App.—Fort Worth 2005, pet. ref'd).

Toward the end of its case, the State informed the trial court that it desired to present evidence of another incident of sexual abuse committed by appellant

7

to rebut his defensive theories that Danielle had made up the allegations against him, that the girls had conspired against him, and that Cara may have been sexually inappropriate with a boy that she knew rather than appellant. The State contended that the extraneous offense testimony would show that the allegations by Cara and Danielle were not a "frame up." Although the State suggested that it knew of six other sexual abuse victims by appellant, it proposed to elicit testimony from only the victim with the "closest scenario to the type of abuse that occurred" with Cara and Danielle. The State explained that the proposed testimony would come from a victim, Susan, who did not know Cara or Danielle and therefore could not have been part of their alleged conspiracy against appellant.

Appellant objected to the admission of the extraneous offense testimony, arguing that the offense was remote in time, that the defense had not "propounded much of a defensive theory," and that the State therefore had nothing to rebut. Appellant's counsel argued that appellant had "not in any way, shape, or form suggested that [he] never . . . had other victims or that . . . his character [was] sterling." In reply, the State contended that the evidence was also admissible to show appellant's opportunity to commit the offense and to rebut his stance that he could not have committed the offenses with other people nearby.

In Susan's testimony outside of the jury's presence, she stated that she was twenty-two years old; that when she was seven to eight years old, her

8

mother was married to appellant; that she and her siblings therefore lived with appellant; and that more than once while she was sleeping in a bed between her mother and appellant, he touched her bottom and vagina underneath her clothes with his fingers. The trial court overruled appellant's objection to Susan's testimony and allowed her to testify in front of the jury after giving the following instruction:

> [T]he Defendant is on trial solely for the charge that's contained in the indictment.
>
> And in reference to any evidence from the next witness, you are instructed that before you may consider such evidence, you must believe . . . beyond a reasonable doubt that any of the said acts were committed. And even then, you may only consider such evidence to assist you, if it does, in understanding whether or not this evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident.[9]

Susan testified about the same facts in front of the jury and added that she had never met Danielle or Cara.[10]

On appeal, appellant contends that Susan's testimony was inadmissible under rule of evidence 404(b) because he had not advanced a defensive theory, because witnesses had denied that they had conspired against appellant, and because Cara had testified that nothing had happened with the boy that she

---

[9]The trial court included a similar instruction in its jury charge.

[10]Susan's testimony in front of the jury spans eight pages of the reporter's record.

9

knew. Appellant appears to argue that Susan's testimony had no relevance other than character conformity.[11]

Evidence of crimes, wrongs, or acts for which the defendant is not on trial "is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b); *see Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) ("The general rule is that the defendant is to be tried only for the offense charged, not for any other crimes or for being a criminal generally."), *cert. denied*, 558 U.S. 828 (2009); *Powell*, 63 S.W.3d at 438 (stating that extraneous offense evidence may be admissible when it is relevant to prove a "noncharacter conformity fact of consequence"). The list of nonconformity purposes in rule 404(b) is illustrative and not exhaustive. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (explaining that rule 404(b) promotes inclusion of evidence); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.).

In *Powell*, during a trial for indecency with a child, the State presented evidence that Powell had sexually molested the victim—a young female—on

---

[11]Appellant does not argue on appeal that Susan's testimony was inadmissible under rule of evidence 403. *See* Tex. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). Appellant also does not argue on appeal that the event described by Susan was too remote in time to be admissible.

numerous occasions in his living room while other people were sleeping in the room. 63 S.W.3d at 436. Powell contended in his opening statement and through cross-examination of the victim that he could not have had the opportunity to molest the victim with others present in the same room. *Id.* at 436–37. In response, the State offered extraneous offense evidence from several witnesses who testified that appellant had molested them under circumstances similar to those the victim had described. *Id.* at 437. The court of criminal appeals held that the trial court had not abused its discretion by admitting evidence of the extraneous crimes because the evidence rebutted Powell's defensive theory "that he had no opportunity to commit the offense because he was never alone" with the victim. *Id.* at 438. And the court expressly concluded that a trial court may have the discretion to allow extraneous offense evidence in response to an argument made in a defendant's opening statement. *Id.* at 439; *see also Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) ("Our case law supports a decision that a defense opening statement . . . opens the door to the admission of extraneous-offense evidence . . . ."); *Dale v. State*, No. 04-08-00418-CR, 2009 WL 2525421, at *3 (Tex. App.—San Antonio Aug. 19, 2009, no pet.) (mem. op. on reh'g, not designated for publication) ("Because Dale claimed he lacked intent to commit the offense during his opening statement, the trial court did not abuse its discretion in admitting [extraneous offense] testimony as rebuttal evidence.").

11

In a similar case decided two months after *Powell*, the court of criminal appeals again held that extraneous offense evidence was admissible to rebut a defendant's claim that he did not have the opportunity to commit a sexual crime with the victim while other people were in the same room. *See Wheeler v. State*, 67 S.W.3d 879, 887 (Tex. Crim. App. 2002) ("The defensive theories were essentially that appellant was never alone with S.E., and therefore *lacked an opportunity* to abuse her, or alternatively, that it would have been impossible for appellant to abuse her in a room full of people. . . . S.S.'s testimony served to rebut these defensive theories.") (emphasis added); *see also Rivera v. State*, 269 S.W.3d 697, 705 (Tex. App.—Beaumont 2008, no pet.) (holding similarly).

Here, the State explained in its opening argument that the evidence would show that appellant molested Cara and Daniele on a couch where he slept. During appellant's opening statement, he contended in part,

> This was not something hidden away in the closet, in the back room, the doors locked, and the music turned up. This is something they are alleging happened in the one big downstairs room where anyone could come in and see it. *It just does not add up.*

> [There are] even allegations that something occurred with [Danielle] and [appellant] *while the other children were on the floor asleep*.

> . . . .

> I believe you're going to have doubts that are reasonable about the mechanisms of this encounter, the situation, [and] the circumstances surrounding it. [Emphasis added.]

Appellant's cross-examinations of Christopher and Cara focused in part on sleeping arrangements on the couch and whether there were occasions when Cara, Beth, and Danielle had all slept in the living room together.

We conclude that appellant's opening statement raised a contention that he did not have an opportunity to sexually abuse Cara or Danielle in the living room because someone else was in the house, including other children who slept in that room and could have observed him doing so. Appellant's cross-examinations of Christopher and Cara appear to have been partly directed at supporting that contention. Thus, the trial court could have reasonably found that Susan's testimony, which concerned appellant's abuse of her while her mother was sleeping next to her in the same bed, rebutted appellant's contention by proving that his opportunity to abuse Cara and Danielle was not negated by their physical proximity to other people or the chance of discovery by those people. *See Powell*, 63 S.W.3d at 436–38; *see also Guzman v. State*, No. 13-03-00303-CR, 2004 WL 5050895, at *3 (Tex. App.—Corpus Christi Aug. 26, 2004, no pet.) (mem. op., not designated for publication) (holding that a trial court did not abuse its discretion by admitting evidence of an extraneous sexual offense when a defendant's cross-examination attempted to show that the he lacked the

13

opportunity to commit the offense against the victim because someone else would have heard or seen the act).[12]

It is at least subject to reasonable disagreement whether Susan's testimony about an extraneous offense was admissible for the noncharacter-conformity purpose of rebutting appellant's contention that he could not have had an opportunity to sexually abuse Cara and Danielle with other people in or near the same room. *See Bass*, 270 S.W.3d at 563; *Powell*, 63 S.W.3d at 436–38. Therefore, we hold that the trial court did not abuse its discretion by admitting Susan's testimony, and we overrule appellant's second point.

### The Denial of Appellant's Motion for Mistrial

In his third point, appellant contends that the trial court abused its discretion by denying his motion for mistrial that was based on the State's alleged comments on his decision to not testify. In the State's closing argument on appellant's guilt, the following exchange occurred:

> [THE STATE:] This grown man made the decision and the choices to violate these children and now wants to stand here before you and say that he didn't do it.
>
> [DEFENSE COUNSEL]: Objection. That's [a] comment on his failure to testify. I object.
>
> [THE STATE]: Your Honor, he pled not guilty.

---

[12]The main case relied upon by appellant is distinguishable. *Sandoval*, 409 S.W.3d at 299 ("The issue of opportunity, or lack thereof, was not raised in this case.").

[DEFENSE COUNSEL]: I object. I object. That's [a] comment on his failure to testify.

THE COURT: Overruled.

[THE STATE]: He is not taking responsibility.

[DEFENSE COUNSEL]: Continued objection. May I have a running objection, Your Honor?

THE COURT: You may.

[THE STATE]: He's guilty. You know he's guilty.

Although the trial court had initially overruled appellant's objection, it later sustained the objection "as to the statement . . . regarding [appellant] saying he didn't do it" and instructed the jury to disregard that argument. The court then denied appellant's request for a mistrial.[13]

We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Whitney v. State*, 396 S.W.3d 696, 703 (Tex. App.—Fort Worth 2013, pet. ref'd). "When the refusal to grant a mistrial follows an objection for improper jury argument, we balance three factors to determine whether the trial court abused its discretion: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct." *Id.*; *see Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011). Only in extreme circumstances, when the prejudice caused by an improper argument is

---

[13]On appeal, appellant contends only that the trial court erred by denying his motion for a mistrial. He does not argue that the trial court erred by overruling any part of his objection to the State's closing argument or that the trial court's instruction to disregard was inadequate.

15

so incurable that expenditure of further time and expense would be wasteful and futile, will a mistrial be required. *Whitney*, 396 S.W.3d at 703–04.

The State cannot "comment on the failure of an accused to testify. Such a comment violates the privilege against self-incrimination and the freedom from being compelled to testify contained in the Fifth Amendment of the United States Constitution and Article I, § 10, of the Texas Constitution." *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001) (footnote omitted); *see also* Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005). To violate the defendant's right against compelled self-incrimination, however, the

> offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear. It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify.

*Bustamante*, 48 S.W.3d at 765 (footnotes omitted); *Hill*, 303 S.W.3d at 877–78 (applying the *Bustamante* standard and overruling an appellant's argument because it was unclear whether the prosecutor's comment referred to the appellant's decision to not testify). A mere indirect or implied allusion to the accused's failure to testify does not violate the accused's right to remain silent. *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004).

The first part of the State's objected-to argument, in which the prosecutor stated that appellant wanted to "*stand* . . . before [the jury] *and say that he didn't do it*," appears to refer not to inaction or avoidance (such as not testifying) on

16

appellant's part but to affirmative action in contesting the charge (such as the denial of the offense in his opening statement).[14] Thus, we cannot conclude that the first part of the State's argument was improper; it did not necessarily and naturally refer to appellant's decision to not testify. *See Bustamante*, 48 S.W.3d at 765.

The second part of the argument, when the prosecutor said that appellant was "not taking responsibility" for the offense, could have intended to summarize testimony from Lacy (Danielle's mother) that appellant had denied committing the offense upon being confronted.[15] *Cf. Randolph v. State*, 353 S.W.3d 887, 893 (Tex. Crim. App. 2011) (stating that there is no error if "evidence in the record supports the prosecutor's remarks" and upholding a remark that the defendant had refused to take responsibility because the defendant had expressly denied responsibility through testimony); *Weems v. State*, 328 S.W.3d 172, 180 (Tex. App.—Eastland 2010, no pet.) (holding that a prosecutor's statement about the defendant's lack of cooperation was permissible because the record contained

---

[14]In appellant's opening statement, his counsel said that certain details of the offense did not "add up" and expressed in part, "I believe you're going to have doubts that are reasonable about the mechanisms of this encounter, the situation, [and] the circumstances surrounding it. And I believe that you're going to come back with a verdict of not guilty."

[15]Lacy testified, "[Appellant] denied it all, said that it was a lie, it wasn't true, it never happened." Lacy also stated, "[Appellant] never would look me in my face. He would always look down. And he was shaking . . . . And I could tell he was nervous. And I actually thought he would tell me the truth. I really thought that he would confess to me, but he didn't."

17

testimony from a police officer about the lack of cooperation). We are concerned, however, that the present-tense delivery of the argument—"He *is not taking* responsibility"—may have focused the jury upon appellant's decision to not discuss the offense through his testimony at trial. *See Randolph*, 353 S.W.3d at 893 (indicating that a comment may be prohibited when it accentuates the defendant's failure to claim present remorse or responsibility); *Snowden v. State*, 353 S.W.3d 815, 823–24 (Tex. Crim. App. 2011) ("[T]he prosecutor's remark about the appellant's lack of remorse in the courtroom was an objectionable comment on the appellant's failure to testify because it highlighted for the jury the appellant's failure to take the stand and claim present remorse.").

To the extent that the second part of the State's argument may have been improper, we cannot conclude that the trial court abused its discretion by denying appellant's motion for mistrial based on the statement. *See Whitney*, 396 S.W.3d at 703–04. After stating the second part of the argument quoted above, the prosecutor did not discuss appellant's refusal to take responsibility at any other point. *Cf. Garcia v. State*, No. 02-10-00275-CR, 2011 WL 1601286, at *3 (Tex. App.—Fort Worth Apr. 28, 2011, no pet.) (mem. op., not designated for publication) (considering that a prosecutor did not repeat an improper comment); *see also Jackson v. State*, No. 05-11-00438-CR, 2013 WL 1277881, at *2 (Tex. App.—Dallas Feb. 28, 2013, no pet.) (mem. op., not designated for publication) (same). Instead, the parts of the State's argument that preceded and followed the excerpt above discussed the jury's ability to convict based on the children's

18

testimony alone, details of their testimony and their pretrial statements, evidence that supported their testimony, explanations for inconsistencies in testimony, appellant's unsupervised access to the children, and the elements of section 21.02. The embedding of one possibly improper remark within many other proper arguments that invited the jury to draw legitimate inferences of appellant's guilt persuades us that the trial court did not abuse its discretion by denying a mistrial. *See Archie*, 340 S.W.3d at 741.

Next, the trial court instructed the jury before voir dire and again in the jury charge that appellant's decision to not testify could not be considered for any purpose.[16] We generally presume that the jury followed such cautionary instructions. *See id.* We cannot conclude that the State's comment in this case was "so indelible that the jury would simply ignore the trial court's specific and timely instruction" to not consider appellant's decision to not testify as a factor against him. *See id.*

Finally, we conclude that the evidence was compelling enough to make the conviction certain without the comment. *See id.* at 741–42; *Whitney*, 396 S.W.3d at 703, 706. The jury heard Cara's and Danielle's statements at the time of their outcries and their testimonies at trial, in which they explicitly described appellant's acts of sexual abuse against them. Also, the jury received evidence corroborating Cara's and Danielle's claims against appellant, such as

---

[16]Likewise, the parties repeatedly discussed appellant's right to not testify in voir dire.

19

Christopher's testimony that the girls routinely spent the night at appellant's home and sometimes lay next to appellant on a couch, a police officer's testimony that he found a vibrator in the home (after Cara had testified that appellant had placed a vibrator on her sexual organ), Lacy's testimony that appellant bought expensive gifts for the girls (which suggested his inappropriate relationship with them), and Lacy's testimony that appellant begged her to not call the police and offered to surrender possession of his children if she did not do so. Like in *Archie*, it "seems unlikely that the jury would have ignored the court's explicit instructions and convicted the appellant, not on the compelling evidence introduced against him, but because he failed to take the witness stand to explain himself." 340 S.W.3d at 742.

For all of these reasons, after considering the State's permissible comment and the possibly improper comment in context with the entire record, we conclude that the trial court did not abuse its discretion by denying appellant's motion for mistrial. *See Whitney*, 396 S.W.3d at 703. The possibly improper comment was not so prejudicial that expenditure of further time would have been wasteful and futile. *Id.* at 703–04. We overrule appellant's third point.

## Conclusion

Having overruled all of appellant's points, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 20, 2014