

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOS. AP-76,801 & AP-76,802

## EX PARTE WILLIAM CHARLES DENTON, Applicant

## ON APPLICATIONS FOR WRIT OF HABEAS CORPUS FROM HENDERSON COUNTY

**KELLER, P.J., filed a concurring opinion.**

The present case involves an exceedingly complex double-jeopardy question, with only limited, neutral briefing from the State. Many of the significant issues and authorities relevant to the question are not addressed in the Court's opinion. When complex issues are not subjected to adversarial testing, and when the relevant issues have not been sufficiently aired out, there is a danger in granting relief in anything other than a brief, unpublished opinion. I believe that that danger manifests itself in the Court's opinion. Under the circumstances, I agree with granting applicant relief but do not join the Court's opinion.

### A. General Double Jeopardy Principles

To understand the complexity of the issue before us, we must first review some general double-jeopardy principles. There are two ways in which offenses can be the same or different under

double-jeopardy law when two statutes are involved: (1) by elements, and (2) by units.[1] For a

double-jeopardy violation to occur, the offenses at issue must be the "same" in both respects.[2]

## 1. *Elements*

An elements inquiry is limited to the law and the charging instrument.[3] In determining

whether offenses are the same or different under such an inquiry, the *Blockburger*[4] test sets out the

starting presumption, but, at least in the multiple-punishments context, that presumption can be

rebutted by other indicia clearly manifesting a legislative intent to the contrary.[5] Under *Blockburger*,

"where the same act or transaction constitutes a violation of two distinct statutory provisions, the test

---

[1] *Ex parte Hawkins*, 6 S.W.3d 554, 557 n.8 (Tex. Crim. App. 1999) (discussing legal elements versus units of prosecution).

[2] *Id.* (quoting Akhil Reed Amar, *Double Jeopardy Law Made Simple*, Yale L.J. 1807, 1817-18 (1997) ("[A]n offense must not only be the same in law—it must also be the same in fact.")).

[3] *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008); *Hall v. State*, 225 S.W.3d 524, 532-33 (Tex. Crim. App. 2007).

[4] *Blockburger v. United States*, 284 U.S. 299 (1932).

[5] *Littrell v. State*, 271 S.W.3d 273, 276 (Tex. Crim. App. 2008) (If one offense "is a lesser-included" of the other under *Blockburger*, "the judicial presumption is that they are the same for double-jeopardy purposes" and the "second question, in that event, is whether the Legislature has clearly expressed a contrary intention that the accused should in fact be punished for both the greater and the lesser-included offenses."); *id.* at 277 n.23 ("Of course, even when two statutorily defined offenses are clearly not the same under a *Blockburger* analysis, other considerations might make it clear that the Legislature nevertheless intended that an accused not be punished under both provisions."). *See also Bigon*, 252 S.W.3d at 370 ("When multiple punishments arise out of one trial, the *Blockburger* test is the starting point in analyzing the two offenses."); *Ex parte Ervin*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999) ("[T]he *Blockburger* test cannot authorize two punishments where the legislature clearly intended only one."); *Gonzales v. State*, 304 S.W.3d 838, 845-46 (Tex. Crim. App. 2010) ("The traditional indicium of . . . legislative intent is the so-called 'same elements' test of *Blockburger*," but "even if a straightforward application of the *Blockburger* test would suggest that two offenses are not the 'same' for double jeopardy purposes," the offenses are nevertheless considered the same, "if other indicia manifest a legislative intent that an accused not be punished for both offenses").

to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[6] In the multiple punishments context, if the offenses have the same elements under *Blockburger*, then an analysis can occur under *Missouri v. Hunter*[7] to determine whether the Legislature nevertheless intended to allow multiple punishments.[8] Conversely, if the offenses have different elements under *Blockburger*, then an analysis can occur under *Ex parte Ervin* to determine whether the Legislature nevertheless intended the offenses to be treated as the same.[9] The *Hunter/Ervin* analysis is part of the elements aspect of Double Jeopardy law.[10] The allowable unit of prosecution prescribed for the offenses is a relevant consideration under an *Ervin* analysis,[11] but only in the abstract, in an effort to determine whether, under the law and the charging instrument, the offenses are considered to be the same elementally.

### 2. *Units*

A units (or "allowable unit of prosecution") inquiry is separate, designed to determine

---

[6] 284 U.S. at 304.

[7] 459 U.S. 359 (1983).

[8] *See id.*; *Ervin*, 991 S.W.2d at 807. A *Missouri v. Hunter* inquiry may not be allowed in the multiple-prosecution context due to finality concerns. *See State v. Perez*, 947 S.W.2d 268, 270 n.3 (Tex. Crim. App. 1997).

[9] *See Gonzales*, 304 S.W.3d at 845-46 (discussing *Ervin*). This analysis can occur in both the multiple prosecution and the multiple punishment contexts.

[10] *See Hall*, 225 S.W.3d at 533 n.39 (recognizing that *Hunter* involved a cognate-pleadings analysis); *Bigon*, 252 S.W.3d at 372 (under an *Ervin* analysis, looking at charging instrument allegations to determine the underlying felony in felony-murder prosecution); *Ervin*, 991 S.W.2d at 807 (recognizing "the inverse conclusion" from *Hunter*).

[11] *Bigon*, 252 S.W.3d at 371-72.

whether a single legally proscribed offense has been committed more than once.[12] A units inquiry can also be divided into two parts: (1) what the unit is,[13] and (2) whether the requisite number of units have been shown.[14] This inquiry involves determining such things as whether there were two murder victims, whether a victim who was assaulted on Monday was assaulted again on Tuesday, or whether multiple kinds of sex acts were committed against a victim. Evidence at trial can be considered in determining whether the requisite number of units has been shown.[15] A units inquiry might more commonly arise when a single statute is involved[16] and a court is trying to discern how

---

[12] *See Sanabria v. United States*, 437 U.S. 54, 69-70, 69 n.24 (1978); *Saenz v. State*, 166 S.W.3d 270, 272-74 (Tex. Crim. App. 2005).

[13] *See e.g. Vick v. State*, 991 S.W.2d 830, 832-34 (Tex. Crim. App. 1999) (Penetration of anus and sexual organ are different units in aggravated sexual assault.); *Hawkins*, 6 S.W.3d at 556 (Different victims are different units in a robbery.); *Ex parte Cavazos*, 203 S.W.3d 333, 335-37 (Tex. Crim. App. 2006)(Entry is the unit in a burglary.).

[14] *Blockburger*, 284 U.S. at 303 (Second drug sale was a separate offense because it "was not the result of the original impulse, but of a fresh one."); *Ex parte Goodbread*, 967 S.W.2d 859, 860-61 (Tex. Crim. App. 1998) (can have multiple prosecutions for different incidents of the same type of sexual assault).

[15] *Blockburger*, 284 U.S. at 303; *Goodbread*, 967 S.W.2d at 860 ("For Double Jeopardy purposes, the same offense means the identical criminal act, not the same offense by name . . . . [W]hen one cannot determine from the State's pleadings whether the offenses prosecuted are the same, the court must look to the proof offered at trial.") (citing and quoting favorably from *Luna v. State*, 493 S.W.2d 854 (Tex. Crim. App. 1973)); *id.* at 861 (We look to evidence at trial to determine what instances of conduct conforming to the indictment are jeopardy-barred.); *see also Quintano v. People*, 105 P.3d 585, 592, 595 (Colo. 2005) ("[W]hile we do not adopt any specific list of factors to determine whether the defendant's acts constitute factually distinct offenses, we look to all the evidence introduced at trial to determine whether the evidence on which the jury relied for conviction was sufficient to support distinct and separate offenses.").

[16] *See Bigon*, 252 S.W.3d at 371-72 ("Usually, analysis of an allowable unit of prosecution involves a situation in which two offenses from the same statutory section are charged.").

to divide conduct (e.g., a sexual assault with multiple manners and means) into units.[17]  Parsing a single statute "is unlike a situation involving different statutes, which, by itself, is some indication of legislative intent to authorize multiple prosecutions simply because the offenses are separately defined in different statutes."[18]  So, while a determination that the elements are different under the *Blockburger* test sets up a presumption in a multiple-statute elements inquiry, no such presumption is created in a single-statute units inquiry.[19]  Nevertheless, if offenses under different statutes are the "same" elementally, then a units analysis could be appropriate if, for example, the pleadings or the evidence indicates that there are different victims.[20]

### B. Aggravated Robbery and Aggravated Assault

### 1. *The State's Briefing and the Habeas Court's Findings*

The State did not file a brief after we filed and set the instant habeas applications, but the State had earlier filed a response to the applications with the trial court.  The State's response was essentially neutral with respect to whether relief should be granted.  The State conceded that the offenses are the same by their elements: "If the Court were to find that the actions taken by the defendants constituted a single transaction, then the only conclusion is that a double jeopardy violation has occurred."  But the State suggested that the offenses might be different by their units.

---

[17] *See Vick*, 991 S.W.2d at 833 n.1 (arriving at the same result under either the *Blockburger* test or an inquiry regarding how to divide the offense into separate prosecutable acts).

[18] *Id.* at 832.

[19] *See Vineyard v. State*, 958 S.W.2d 834, 836 n.5 (Tex. Crim. App. 1998) ("We also note this Court has stated the *Blockburger* test is not 'precisely applicable' to cases like this where a defendant's conduct violates one statutory provision more than once.").

[20] *See Hawkins*, 6 S.W.3d at 557 n.8.

According to the State, applicant's act of firing into the wall during the process of attempting to take the victims' money could be viewed as the aggravated robbery, while a co-defendant's act of shooting one of the victims could be viewed as a separate offense of aggravated assault. The State acknowledged that "the issue is debatable."

In its findings of fact and conclusions of law, the habeas court accepted the State's suggestion that these were different offenses by their units. According to the habeas court, "The first assault occurred when William Denton fired a shot into the wall, and the second assault occurred when Michael Wainionpa shot Nicholas Moore in the leg. Even though the two crimes occurred close in time, there were two separate incidents, with a break in the action between the two events." The habeas court did not say which assault was part of the aggravated robbery and which assault constituted the separate crime of aggravated assault.

### 2. *Elements*

#### a. Comparing the Statutes

Aggravated robbery and aggravated assault are defined in different sections—in fact, in different chapters—of the Penal Code. As explained above, the fact that the offenses involved are defined in different statutes is some indication that the Legislature intended multiple punishments. The aggravated-robbery and aggravated-assault statutes do contain a number of parallel elements. Both allow an underlying lesser offense to be aggravated by the use of a deadly weapon (the aggravating factor alleged in the indictment in this case) or by the infliction of serious bodily injury.[21] The underlying lesser offenses of assault and robbery both contain alternative manners and means

---

[21] *Compare* TEX. PENAL CODE § 22.02(a)(1), (2) *with id.* § 29.03(a)(1), (2).

involving "bodily injury" and a "threat."[22]

For the purpose of determining a lesser-included offense under § 37.09 of the Code of Criminal Procedure, we have recognized that assault may or may not be a lesser-included offense of robbery depending upon which alternative manners and means are alleged:

> For example, robbery may be committed either by causing bodily injury or by threatening imminent bodily injury. Each of these forms of robbery includes, as a lesser offense, a form of assault that the other does not include. An allegation of robbery by threat includes the lesser offense of assault by threat; it does not include the offense of assault by causing bodily injury. Conversely, an allegation of robbery by causing bodily injury would include the lesser offense of assault by causing bodily injury, but it would not include the offense of assault by threats.[23]

### b. The Williams Construction

There is at least one substantial difference between the underlying assault and robbery statutes that relates to the case hand. The "threat" portion of the assault statute provides that a person commits an offense if he "intentionally or knowingly threatens another with imminent bodily injury."[24] The counterpart provision in the robbery statute provides that a person commits an offense if he "intentionally or knowingly threatens *or places* another *in fear of* imminent bodily injury or death."[25] As can be seen, the robbery statute contains the phrase "places . . . in fear of" that is not contained in the assault statute. In *Williams v. State*, the First Court of Appeals indicated that this

---

[22] *Compare id.* § 22.01(a)(1), (2) *with id.* § 29.02(a)(1), (2).

[23] *Bell v. State*, 693 S.W.2d 434, 436 n.3 (Tex. Crim. App. 1985) (citation omitted, citing *Martinez v. State*, 599 S.W.2d 622, 624 (Tex. Crim. App. 1980) (in turn, citing *Mitchell v. State* 543 S.W.2d 637 (Tex. Crim. App. 1976) (holding that aggravated robbery by threat does not include aggravated assault by causing bodily injury)).

[24] TEX. PENAL CODE § 22.01(a)(2) (emphasis added).

[25] *Id.* § 29.02(a)(2) (emphasis added).

difference in language results in a significant difference in the meaning of the two statutes, because

a threat is not actually required to establish robbery:

> We note that an element of the crime of robbery, "*places* another in fear of imminent
> bodily injury," TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 1989) (emphasis
> added), differs from an often compared, but vastly dissimilar element for the crime
> of assault, "*threatens* another with imminent bodily Injury," TEX. PENAL CODE ANN.
> § 22.01(a)(2) (Vernon 1989) (emphasis added). The general, passive requirement that
> another be "placed in fear" cannot be equated with the specific, active requirement
> that the actor "threaten another with imminent bodily injury." Under the "placed in
> fear" language in section 29.02 of the Texas Penal Code, the factfinder may conclude
> that an individual perceived fear or was "placed in fear," in circumstances where no
> actual threats were conveyed by the accused.[26]

In published opinions, the Third, Sixth, and Fourteenth courts of appeals have followed

*Williams*.[27] In *Wilmeth v. State*, the Twelfth Court of Appeals indicated that "a menacing glance"

could be sufficient to show that the defendant placed a victim in fear of imminent bodily injury.[28]

A review of recent unpublished opinions shows other courts of appeals citing *Williams* or its progeny

for the proposition that the "places in fear" element means that a threat is not required to establish

a robbery.[29] If both published and unpublished opinions are considered, the *Williams* case articulates

---

[26] 827 S.W.2d 614, 616 (Tex. App.–Houston [1ˢᵗ Dist.] 1992) (emphasis in original).

[27] *Welch v. State*, 880 S.W.2d 225, 227 (Tex. App.–Austin 1994); *Howard v. State*, 306 S.W.3d 407, 410-11 (Tex. App.–Texarkana 2010); *Burton v. State*, 230 S.W.3d 846, 852 (Tex. App.–Houston [14ᵗʰ Dist.] 2007). *See also Boston v. State*, 373 S.W.3d 832, 840 (Tex. App.–Austin 2012) ("Moreover, '[b]y defining robbery to be theft plus *either* threatening or placing another in fear, [the robbery] statute demonstrates that the term "threaten" means something other than placing a person "in fear of imminent bodily injury or death."'") (quoting from *Olivas v. State*, 203 S.W.3d 341, 345-46 (Tex. Crim. App. 2006), emphasis in *Olivas* and *Boston*, brackets in *Boston*).

[28] 808 S.W.2d 703, 706 (Tex. App.–Tyler 1991).

[29] *Ross v. State*, 2012 Tex. App. LEXIS 7068 (Tex. App.–Fort Worth August 23, 2012) (not designated for publication) (citing *Burton* for the proposition that the defendant's informing teller that this is a "holdup" and demanding money reasonably placed the teller in fear of bodily injury); *Reed v. State*, 2012 Tex. App. LEXIS 1650, *11 (Tex. App.–Waco February 29, 2012) (not

the near-unanimous view of the courts of appeals, excepting only (possibly) the court in El Paso.

We cannot consider the unpublished decisions as authority, but they demonstrate that the *Williams*

holding is an issue of law circulating in the courts of appeals that we need to address in an

appropriate case.[30]

---

designated for publication) ("Under the 'placed in fear' language of section 29.02, the fact-finder may conclude that an individual was 'placed in fear' in circumstances where no actual threats are conveyed."); *Britton v. State*, 2011 Tex. App. LEXIS 5421, *3 (Tex. App.–Dallas July 15, 2011) (not designated for publication) ("If no actual threats were conveyed by the defendant, the factfinder must conclude the victim 'perceived fear' or was 'placed in fear' by the circumstances, including the defendant's words and actions."); *Hines v. State*, 2010 Tex. App. LEXIS 6739, 12 (Tex. App.–Corpus Christi August 19, 2010) (not designated for publication) ("Under the 'placed in fear' language contained in penal code section 29.02, the factfinder may conclude that an individual was 'placed in fear' in circumstances when no actual threats are conveyed."); *Barrow v. State*, 2010 Tex. App. LEXIS 4128, *7 (Tex. App.–Amarillo May 28, 2010) (not designated for publication) ("Under the 'placed in fear' language in section 29.02 of the Penal Code, the factfinder may conclude that an individual perceived fear or was 'placed in fear,' in circumstances where no actual threats were conveyed by the accused."); *Mesquiti v. State*, 2005 Tex. App. LEXIS 39, *2-3 (Tex. App.–San Antonio January 5, 2005) (not designated for publication) ("The general, passive requirement that another be 'placed in fear' cannot be equated with the specific, active requirement that the actor 'threaten another with imminent bodily injury.' Under the 'placed in fear' language, the factfinder may conclude that an individual perceived fear or was 'placed in fear,' in circumstances where no actual threats were conveyed by the accused.") (citations omitted); *Bradley v. State*, 2004 Tex. App. LEXIS 866. *3 (Tex. App.–Beaumont January 28, 2004) (not designated for publication) ("Under the 'placed in fear' language, the factfinder may find that an individual perceived fear in a situation where the accused made no actual threats."); *Lavender v. State*, 2003 Tex. App. LEXIS 8367, *6 (Tex. App.–Eastland Sept. 25, 2003) (not designated for publication) ("The accused need not expressly threaten another or display a weapon to commit robbery. It is sufficient to constitute robbery if the accused places the complainant in fear of bodily injury or death to the degree that 'reason and common experience' will likely induce the complainant to part with his property against his will.") (citations to *Williams* and other cases omitted); *Adkins v. State*, 2003 Tex. App. LEXIS 2644 (Tex. App.–Fort Worth March 24, 2003) (not designated for publication) (Under assault statute, "there must at least be evidence of some overt conduct by the defendant that suggests he acted with an intent to threaten"—citing *Williams* as "comparing robbery statute that requires 'placing' another in fear with the assault statute.").

[30] *See Alford v. State*, 358 S.W.3d 647, 657 & n.21 (Tex. Crim. App. 2012) (Unpublished opinions cannot be cited as authority but can be cited to demonstrate conflict among the courts of appeals or to demonstrate how this Court and other courts have interpreted and applied constitutional law.). *See also* TEX. R. APP. P. 77.3.

### c. Application of Blockburger

If the *Williams* decision is correct, then "threatens" and "places in fear" are alternative statutory methods of committing the offense of robbery and the "places in fear" variant of robbery is different under the *Blockburger* test than the offense of aggravated assault by threat. The next question would be whether an aggravating element that raises a robbery to *aggravated* robbery would necessarily entail a threat element not otherwise found in the "places in fear" variant of robbery. If that aggravating element would necessarily entail a threat, by itself or in conjunction with the other elements of robbery, then aggravated assault by threat could be a lesser-included offense of the "places in fear" variant of *aggravated* robbery. The aggravating element for robbery in applicant's indictments is "use or exhibit a deadly weapon." Although the aggravated-assault count alleges how the deadly weapon was used—"firing a firearm"—the aggravated-robbery count does not.[31] Given the broad meaning assigned to "use" of a deadly weapon in our caselaw, it seems likely that such use could occur in a robbery offense (assuming *Williams* is correct) without requiring a threat.[32]

### d. Ervin Analysis

If we determine that the offenses of "aggravated robbery by placing in fear" and "aggravated assault by threat" are different under *Blockburger*, we must then conduct an *Ervin* analysis to determine whether other factors persuade us that the legislature nevertheless intended that the

---

[31] Thus, the aggravated-robbery count does not expand the deadly-weapon allegation beyond the statutory language under the cognate-pleadings test in *Hall*. *See Hall*, 225 S.W.3d at 526, 533-35.

[32] *See Clinton v. State*, 354 S.W.3d 795, 802-03 (Tex. Crim. App. 2011); *id.* at 807 (Price, J., concurring); *Patterson v. State*, 769 S.W.2d 938, 940-42 (Tex. Crim. App. 1989).

offenses be treated as the same.[33] We have held that "robbery is a form of assault" and that "the allowable unit of prosecution for robbery should be the same as that for an assault."[34] But, as explained above, assault is not always a lesser-included offense of robbery,[35] and though the aggravated-robbery and aggravated-assault statutes contain significant parallels, there are some notable non-parallel elements.[36] Recently, the Second Court of Appeals held, under an *Ervin* analysis, that aggravated assault and aggravated robbery are the same offense.[37]

*e. Preservation - Face of the Record*

If we determine that "aggravated robbery by placing in fear" and "aggravated assault by threat" are different offenses under *Blockburger* and *Ervin*, then applicant has a preservation-of-error problem. His indictments pled both the "threat" and "placing in fear" variants of aggravated robbery, presenting a situation in which one of the variants (threat) is the same offense as aggravated assault by threat but the other variant (placing in fear) is different. Because the two variants of aggravated robbery were part of the same general verdict, we do not know which theory the jury relied upon in

---

[33] If the offenses are determined to be the same under *Blockburger*, then a *Hunter* analysis would be conducted to determine if the "clearly expressed legislative intent" was to allow punishment for both offenses. *See Hunter*, 459 U.S. at 368. I do not contend that there is any possibility that State would prevail under a *Hunter* analysis.

[34] *Hawkins*, 6 S.W.3d at 560.

[35] *Bell v. State*, 693 S.W.2d at 436 n.3.

[36] In addition to the fact that the robbery statute contains the "places . . . in fear of" language not present in the assault statute, the robbery statute contains the word "death" not found in the assault statute, and the assault statute contains the phrase "including the person's spouse" not contained in the robbery statute. *Compare* TEX. PENAL CODE § 22.01(a)(2) *with id.* § 29.02(a)(2). Whether the latter two differences have any substantive effect is unclear.

[37] *Garfias v. State*, 381 S.W.3d 626, 630-35 (Tex. App.–Fort Worth 2012).

finding applicant guilty. Under those circumstances and assumptions, and assuming that the evidence is sufficient to support the "placing in fear" variant of aggravated robbery, a double-jeopardy violation would not be clearly apparent on the face of the record and would thus be procedurally defaulted.[38]

A colorable sufficiency-of-the-evidence claim might perhaps be made in connection with the aggravated robbery committed against Moore. Moore testified that he did not believe that applicant or his cohorts would shoot him, even after applicant shot into the wall.[39] On the basis of this testimony, it might be argued that Moore was not, in fact, placed in fear of imminent bodily injury or death after this first shot. No such argument can be made with respect victim Foster, who testified that she was in fear after the first shot was fired.[40] And although the State in its response posited the

---

[38] *Langs v. State*, 183 S.W.3d 680, 686-87 (Tex. Crim. App. 2006) ("In this case, appellant's two convictions may or may not violate the double jeopardy clause. Because of the jury charge and structure of the verdict form, we cannot be certain whether the jury relied upon the first (entry with intent to commit a felony) or second (entry and then commission of a felony) burglary theory . . . . When offenses, one of which could give rise to a multiple-punishment double-jeopardy violation, are listed disjunctively in a jury charge, the burden is upon the defendant to 'preserve, in some fashion a double jeopardy objection at or before the time the charge is submitted to the jury.' . . . . [W]hen separate theories for an offense are issued to the jury disjunctively, a double jeopardy violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double jeopardy violation and there is sufficient evidence to support that valid theory."); *Gonzalez v. State*, 8 S.W.3d 640 (Tex. Crim. App. 2000).

[39] Moore testified that he was uncooperative in the robbery because, "I've been around these guys a long period of time, and I never would have dreamed they'd actually shoot me." The prosecutor responded, "Okay. So you still didn't think so after the first shot was fired?" Moore answered, "Not a doubt in my mind." Then the prosecutor asked, "So after you said, You're going to have to shoot me, what happened next?" Moore responded, "Michael shot me."

[40] At various times Foster testified to her fear, including:

Q. Did the defendant say anything to . . . Moore about his personal effects?

* * *

first shot (into the wall) as the assault part of the aggravated robbery, one could reasonably argue that the second shot (in which Moore was injured) was part of the aggravated robbery, and the question would then be whether Moore was placed in fear of imminent bodily injury or death after he was in fact injured.

*f. Absence of Briefing and Analysis*

The Court addresses only some of the issues discussed above and addresses those in only a cursory manner. This is perhaps understandable, given that the State conceded the elements aspect of the double-jeopardy claim in its response and did not submit any further briefing when we filed and set the case. And the State's actions are also perhaps understandable, given that granting relief simply sets aside twenty-year concurrent sentences, and that applicant will continue to serve twenty-

---

A. I'm not real clear on whether it was him or someone else at this point. I really – I don't remember. I was scared. I still am.

\*\*\*

Q. [W]ere you in fear of injury during this robbery?

A. Yes, sir.

\*\*\*

Q. And describe how this defendant–

A. He asked him to take the watch off and [Moore] refused. And that's when him and Israel had his gun come out and everybody was pointing guns and he asked if he thought they were playing and he pointed–he turned his pistol to the side and shot through the wall.

Q. Were you in fear of injury at that point?

A. Yes, sir.

five-year sentences in two cases. In its pleadings, the State also explicitly relied on its interest in seeing justice done. Out of deference to a defendant's right against double jeopardy, we might perhaps accept a State's concession with respect to a particular case when the double-jeopardy issue is inordinately complex. But we should not enshrine such a concession in the law, because in a future case, the issues might be more thoroughly debated in the crucible of adversarial testing.

### 3. *Units*

As discussed earlier, in a multiple-statutes case, an elements analysis is only half the battle: Even if the offenses proscribed by multiple statutory provisions are considered to be the "same" under *Blockburger* or *Ervin*, it is possible to have the repeated commission of the same offense. Murder and manslaughter, though proscribed in different statutes, are the same offense by their *elements* under *Blockburger*. But if the murder is of Mary and the manslaughter is of John, then the offenses are different by their *units*.

The present case contains an obvious and uncontested example of multiple units. The offenses were separately indicted based upon the separate victims. So there are four indicted offenses: an aggravated robbery against Moore, an aggravated assault against Moore, an aggravated robbery against Foster, and an aggravated assault against Foster. No one disputes that the State may receive at least one separate conviction per victim.[41] However, the State suggested in its response, and the habeas court concluded, that each gunshot could also be the basis for a separate conviction.

Whether that is so depends upon how the legislature divides units in the aggravated-robbery

---

[41] *See Jones v. State*, 323 S.W.3d 885, 889 (Tex. Crim. App. 2010) (discussing *Hawkins*); *Hawkins*, 6 S.W.3d at 560.

and aggravated-assault statutes and it is purely a question of statutory construction.[42] Generally, the best indicator of legislative intent with respect to the unit of prosecution is the focus or gravamen of the offense.[43] We know that, for both aggravated robbery and aggravated assault, the focus or gravamen of the offense includes the victim. Does it also include the assaultive act? Is each assaultive act a separate offense? Or is each "transaction" the relevant unit of prosecution? Clearly if a defendant robs (or assaults) the victim on Monday and then robs (or assaults) the victim again on Tuesday, separate robberies (or assaults) have occurred. But can separate robberies or assaults occur against the same victim in the same transaction?

We must decide whether the applicable unit is act or transaction because the present case involves multiple acts in a single transaction. Although the habeas judge found a "break in the action between the two events," he acknowledged that the incidents occurred close in time, so I do not think he was saying that the incidents occurred in separate transactions. In any event, the record does not support the notion that there were multiple transactions. The evidence shows that applicant and his cohorts demanded money and property, that Moore refused to cooperate, that applicant shot into the wall to procure Moore's cooperation, that Moore continued to refuse to cooperate and told the robbers that they would have to shoot him, and that one of applicant's cohorts then shot Moore in the leg. Nothing in the record suggests anything but an unbroken chain of events between the first and second shots fired.

So, can two gunshots occurring in the same transaction constitute separate assaults with respect to the same victim? Do they constitute multiple threats that can be punished separately? I

---

[42] *See Jones*, 323 S.W.3d at 888.

[43] *Id.* at 889.

am unaware of any published cases from this Court that have addressed the question. In its holding in a case involving the prosecution of both an aggravated robbery and an aggravated assault, the Second Court of Appeals has suggested that multiple assaults against the same victim in the same transaction can constitute only one offense.[44] Although I do not necessarily agree with all of the reasoning in the Second Court's opinion, I agree with the implication that the legislature did not contemplate separately punishing multiple assaults against the same victim in the same transaction.

### 4. Preservation - Legitimate State Interests

Even if, after addressing all of the prior issues, we concluded that a double-jeopardy violation is apparent on the face of the record, there would remain the second prong of the preservation analysis: whether the enforcement of the usual rules of procedural default serves no legitimate state interests.[45] The Court writes this second "no legitimate state interest" prong out of the law when it says that it perceives no legitimate state interest in maintaining convictions where it is clearly apparent from the face of the record that they are in contravention of double-jeopardy protections. This is directly contrary to our decision in *Gonzalez*, which espoused the above two-part test after noting that our caselaw on preservation of double-jeopardy claims was "not a model of clarity."[46]

---

[44] *Garfias*, 381 S.W.3d at 633 (In a case where the defendant shot a store clerk four times in a single transaction: "We cannot fathom, however, that under the circumstances of this case, the legislature would intend to punish one continuous assaultive act under multiple assault-related offenses. For example, we cannot imagine that if a person committed one uninterrupted act of slowly rearing back with a closed fist and punching someone, the legislature would intend for the person to be convicted of both causing-bodily-injury assault, which is typically a Class A misdemeanor under section 22.01(a)(1) of the penal code, and threatening-another-with--imminent-bodily-injury assault, which is typically a Class C misdemeanor under section 22.01(a)(2).").

[45] *See Langs*, 183 S.W.3d at 687.

[46] *Gonzalez*, 8 S.W.3d at 642-43.

We reaffirmed the two-part test in *Langs*, where we said that requiring a defendant to raise his double-jeopardy claims in the trial court does serve legitimate state interests.[47]  What the "serves no legitimate state interests" prong really means is that granting the defendant double-jeopardy relief places the State in no worse a position than it would have been in had a timely objection been made. The issue in the present case would be the possibility that the State might have pursued multiple prosecutions for lesser-included offenses that might have survived a double-jeopardy analysis.  I will not, at this time, attempt to determine whether the State could or should have been allowed to pursue such a strategy.  In its neutral response to the habeas application, the State addresses the second prong of the preservation test by saying, "[T]he State does not have any overriding interests at stake. The State was not required to go through additional trials, as both cases were tried as one. Additionally, the State certainly has an interest in seeing that justice is done, and in this case, if a double jeopardy violation is deemed valid, the State has an interest in seeing that relief is granted." Given that response, I conclude that the State does not believe that applicant's tardiness in raising a double-jeopardy claim has prejudiced its interests.

    I respectfully concur in the Court's judgment.

Filed: May 22, 2013
Publish

---

[47]  *See Langs*, 183 S.W.3d at 686 n. 22.