# NO. 12-17-00305-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CEDRIC STEWART,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Cedric Stewart appeals from his conviction for burglary of a habitation. In two issues, he challenges the trial court's evidentiary rulings. We affirm.

## BACKGROUND

The State charged Appellant with burglary of a habitation, enhanced by a prior felony conviction. Appellant pleaded "not guilty" and the matter proceeded to a jury trial.

At trial, Mary Risinger testified that she was out of town on January 21, 2017 when she received an alert from the alarm company that motion was detected inside her home at 1616 Magnolia.[1] When she reviewed the surveillance footage from her home, she saw a man enter through a window and subsequently exit through the window. She saw the man's face and identified Appellant as that man. She testified that Appellant mowed her lawn on occasion and resided nearby. Risinger testified that Appellant did not have permission to be inside her home.

Officer Kris Davis with the Tyler Police Department testified that he discovered footprints on a chair and the floor inside Risinger's home. He reviewed Risinger's surveillance footage and saw that the suspect wore blue gloves, a dark colored baseball cap and shirt, and blue jeans with a

---

[1] Throughout the record, Magnolia is referred to as Street, Avenue, and Drive; thus, for consistency, we will refer to the location as "Magnolia."

dark belt. Detective Melinda Weaver with the Tyler Police Department testified that when she first contacted Appellant, he wore a dark gray shirt, blue jeans, a brown belt, and black shoes. Weaver, Davis, and Officer Collin Hale with the Tyler Police Department testified that Appellant's clothing was similar to that worn by the person on the surveillance footage.

Additionally, while speaking with Appellant's wife, Weaver noticed a box of blue gloves on the living room floor. She then noticed a torn piece of glove on the tip of Appellant's finger. She asked Appellant why he needed gloves, to which Appellant responded that he did not need gloves and did not have any gloves on. When Weaver pointed out the torn piece of glove, Appellant ripped it off his finger and threw it to the ground.

Weaver testified that officers left Appellant's home, but returned approximately twenty-five minutes later. This time, Appellant wore different clothing. Appellant's wife retrieved Appellant's former clothing from the laundry room. Davis testified that officers obtained blue jeans, blue gloves, a dark baseball cap and shirt, and a pair of shoes with prints very similar, if not the same, to the prints found at the scene. Hale testified that Appellant initially denied leaving his house at any point previously that day, but later indicated that he did leave his house. Appellant admitted to Hale that he entered Risinger's home to obtain food for himself and his wife, which Hale testified constitutes burglary.

The record also contains testimony regarding a January 1, 2017 burglary of Risinger's home. Risinger testified that someone entered her home through the window and stole some items, including food. She testified that no one had permission to enter her home on that occasion and that a handwritten note was left inside her home. Hale confirmed that someone entered Risinger's house through the window and stole food and other items. Officers also collected the handwritten note. Detective David Cook with the Tyler Police Department testified that he compared the note to handwritten court documents signed by Appellant and determined that Appellant drafted the note.

Additionally, the State presented evidence of a burglary on July 4, 2016, that occurred at 1716 Magnolia. Angela Rodriguez testified that she returned from out of town to discover that her home was burglarized. The sliding glass door was open, drawers to her mother's jewelry box and dresser were opened, items were strewn across the room, and a digital camera was missing. She discovered that a bedroom window was forced open and the lock broken. Cheryl Rock,

Rodriguez's mother, testified that someone perused her jewelry and took a camera. She and Rodriguez both testified that no one, including Appellant, had permission to enter the home.

Officer Kevin Mobley with the Tyler Police Department confirmed that the burglar entered Rodriguez's home through a back window. Mobley collected fingerprints from the scene. Investigator Donald Malmstrom with the Tyler Police Department testified that he compared Appellant's known prints to those obtained by Mobley, as well as prints provided by the national database, and the prints all belonged to Appellant.

At the conclusion of trial, the jury found Appellant "guilty" of burglary of a habitation and sentenced him to seventy-five years in prison. This proceeding followed.

STANDARD OF REVIEW

We review a trial court's evidentiary rulings for abuse of discretion. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will not reverse unless the trial court's ruling falls outside the "zone of reasonable disagreement." *Oprean*, 201 S.W.3d at 726.

Evidence is relevant when it has a tendency to make a fact more or less probable than it would be without the evidence and that fact is of consequence in determining the action. TEX. R. EVID. 401. Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403. A Rule 403 balancing test considers (1) the inherent probative force of the evidence; (2) the proponent's need for the evidence; (3) any tendency of the evidence to suggest a decision on an improper basis, to confuse or distract the jury from the main issues, or to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

The admission or exclusion of evidence does not result in reversible error unless it affects substantial rights. *See* TEX. R. APP. P. 44.2(b). The erroneous admission of evidence does not affect substantial rights if, after examining the record as a whole, the appellate court has fair assurance that the error did not influence the jury, or had but slight effect. *Motilla v. State*, 78

S.W.3d 352, 355 (Tex. Crim. App. 2002). When making this determination, we "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, [and] the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id*. We may also consider the jury instructions, the State's theory, any defensive theories, closing arguments, voir dire if applicable, and whether the State emphasized the error. *Id*. at 355–56. Evidence of the defendant's guilt must also be considered when conducting a thorough harm analysis. *Id*. at 358.

<u>EXTRANEOUS BURGLARIES</u>

In issue one, Appellant maintains that the trial court abused its discretion by allowing evidence of the January 1 and July 4 burglaries. According to Appellant, the only reason for this evidence was to cause the jury to convict on improper character evidence and any probative value of the evidence was outweighed by its prejudicial effect.

**<u>Applicable Law</u>**

Generally, an extraneous offense is not admissible to prove a person's character in order to show that the person acted in accordance with that character. TEX. R. EVID. 404(b)(1). Such evidence may be admissible for other purposes, including motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. TEX. R. EVID. 404(b)(2). One of the main rationales for admitting extraneous-offense evidence is to prove the offender's identity. *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008). The theory of relevancy is usually that of modus operandi in which the pattern and characteristics of the charged crime and uncharged misconduct are so distinctively similar that they constitute a "signature." *Id*. "Usually, it is the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or modus operandi of a single individual." *Id*. "No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person." *Id*. If similarities are "generic," i.e., typical to this type of crime, they will not constitute a "signature" crime. *Id*. Sometimes the "signature" is one unique characteristic, such as when three bank robberies are committed over a four-year period in different cities in which the robber used an antique silver crossbow. *Id*. "This scenario is so unusual that it is highly likely that each robbery was committed by the same person using the

4

same antique silver crossbow." *Id*. This is known as the "'mark of Zorro' mode of proving identity; it is a remarkably unusual fact, in which a single detail suffices to establish identity." *Id*.

**Analysis**

At a hearing outside the jury's presence, the State argued that the January 1 burglary was probative of Appellant's (1) motive for entering the same home at a time when he knew Risinger was not home, (2) intent to enter the home to take food, and (3) identity because of the handwritten note left behind. The State argued that the July 4 burglary was admissible to show (1) motive, i.e., Appellant's close proximity to Rodriguez's home in Appellant's neighborhood, entry into the home through a rear window, and use of gloves on the January 21 burglary after leaving prints behind on July 4, (2) intent, i.e., Appellant took items of value, and (3) identity, i.e., Appellant was identified via fingerprints. The trial court determined that the evidence was admissible for purposes of intent, identity, mode of commission, and proximity in time/place.

The record demonstrates that identity was an issue at trial. *See id*. During opening arguments, defense counsel argued that Appellant was in his home on January 21, heard the alarm sounding at Risinger's home, and was out on his front porch, along with other neighbors, because of the alarm. He argued that officers could not testify to seeing Appellant commit the crime. During cross-examination of Officer Davis, defense counsel elicited testimony that Appellant did not commit the offense in Davis's presence and that Davis could not identify Appellant facially from the surveillance footage. Officer Hale also testified, on cross-examination, that Appellant did not commit the offense in his presence. In closing, defense counsel argued that the surveillance footage was insufficient to identify the burglar and that Appellant's face could not be seen on the footage.

The record also demonstrates that the pattern and characteristics of the July 4, January 1, and January 21 offenses are so distinctively similar that they constitute a "signature," making the uncharged offenses admissible to prove the identity of the offender with respect to the charged offense. *See id*. All three burglaries occurred at homes in close proximity to Appellant's home when the homeowners were out of town, the burglar entered through a window on all three occasions, the burglar took items on July 4 and January 1 but was apparently spooked by the alarm on January 21, and Appellant left his fingerprints behind on July 4 and a note in his handwriting on January 1. Accordingly, because identity was disputed at trial, the trial court could reasonably conclude that the evidence was, at the very least, admissible and needed by the State for purposes

of identity. *See **Page v. State***, 213 S.W.3d 332, 338 (Tex. Crim. App. 2006) ("the case law in this jurisdiction does not require extraneous-offense evidence to be completely identical to the charged offense to be admissible to prove identity;" similarities between charged offense and extraneous offenses showed a "distinctive and idiosyncratic manner of committing criminal acts"); *see also **Burton v. State***, 230 S.W.3d 846, 850-851 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (similarities between the charged bank robbery and extraneous bank robberies, including lack of onsite security, young age of robbed tellers, and robber wore hat and sunglasses and made robbery demand initially with a note, were sufficient to show idiosyncratic or signature style of bank robbery).

Moreover, Rule 403 favors the admission of relevant evidence. ***Conner v. State***, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). "Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Id*. The "presumption is now that probativeness is the weightier consideration unless in the posture of the particular case the trial court determines otherwise." ***Montgomery v. State***, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990). In the present case, because the charged burglary and extraneous burglaries were identical in several key respects, the extraneous offenses are highly probative on the issue of identity. *See **Burton***, 230 S.W.3d at 851. The evidence was not repetitive and its presentation did not consume an inordinate amount of time. Additionally, the trial court included a limiting instruction in the jury charge:

> During the trial, you may have heard evidence that the defendant may have committed wrongful acts not charged in the indictment. You are not to consider that evidence at all unless you find, beyond a reasonable doubt, that the defendant did, in fact, commit the wrongful act. Those of you who believe the defendant did the wrongful act may consider it.
>
> Even if you do find that the defendant committed a wrongful act, you may not consider this evidence to prove that the defendant is a bad person and for this reason was likely to commit the charged offense. To consider this evidence for this purpose would be improper.

The trial court's instruction minimized any risk of the jury considering the extraneous burglaries for an improper purpose. *See **id***. Under the circumstances of this case, we perceive no clear disparity between the degree of prejudice of the extraneous burglaries and their probative value.

Even assuming that the trial court erroneously admitted the complained-of evidence and that the evidence should have been excluded under Rule 403, the record does not demonstrate that

any such error affected Appellant's substantial rights. The trial focused on the January 21 robbery of Risinger's home and evidence of the two prior burglaries constituted a small portion of the evidence presented to the jury. During opening argument, the State informed the jury that it could consider the two prior burglaries for the limited purposes of identity, intent, motive, and opportunity. In closing, the State again argued that the jury could consider previous instances of conduct to establish intent, identity, and motive, focusing its argument primarily on the prior burglaries as evidence of identity.

Most importantly, independent of evidence regarding the two prior burglaries, the jury heard strong and clear evidence from which it could reasonably conclude that Appellant committed the January 21 burglary. Risinger identified Appellant as the burglar, specifically testifying that she saw a man enter her home through a window and saw Appellant's face on the surveillance footage. The jury heard evidence that (1) Appellant did not have permission to enter Risinger's home, (2) Appellant's shoes resembled prints found in Risinger's home, (3) when officers first encountered Appellant, he wore clothing virtually identical to that worn by the man on the surveillance footage, (4) when officers encountered Appellant a second, short time later, he had changed his clothing, (5) Appellant gave officers conflicting statements regarding whether he left home earlier on the day of the offense, (6) Weaver observed blue gloves on the floor of Appellant's home and a piece of glove on Appellant's finger, and (7) Appellant told Hale that he entered Risinger's home to retrieve food. Thus, even absent the complained-of evidence, the record contains conclusive evidence from which the jury could find Appellant guilty of the charged offense. *See Motilla*, 78 S.W.3d at 358; *see also Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012) (sufficiency of evidence review includes consideration of events occurring before, during and after the offense and the defendant's actions which show an understanding and common design to do the prohibited act); TEX. PENAL CODE ANN. § 30.02(a)(1), (c)(2) (West Supp. 2017) (burglary of a habitation).

We also note that, in addition to the limiting instruction discussed above, the trial court including the following instructions:

> The defendant is presumed innocent of the charge. All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. Unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case, the presumption of innocence alone is sufficient to acquit the defendant.

The burden of proof throughout the trial is always on the state. The defendant does not have the burden to prove anything. The state must prove every element of the offense beyond a reasonable doubt to establish guilt for the offense. If the state proves every element of the offense beyond a reasonable doubt, then you must find the defendant guilty. If the state does not prove every element of the offense beyond a reasonable doubt, then you must find the defendant not guilty….

The trial court also specifically advised that jury that "[s]tatements made by the lawyers are not evidence." We presume the jury followed the trial court's instructions when determining whether the State proved Appellant's guilt beyond a reasonable doubt. *See **Resendiz v. State***, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003).

Accordingly, based on our review of the record as a whole, even assuming the trial court abused its discretion by admitting the extraneous offense evidence, we have fair assurance that any error stemming from the admission into evidence of the two prior burglaries did not influence the jury, or had but slight effect. *See **Motilla***, 78 S.W.3d at 355; *see also* TEX. R. APP. P. 44.2(b). We overrule issue one.

## HANDWRITING ANALYSIS

In issue two, Appellant complains that Detective Cook was not qualified to offer an opinion on handwriting comparison because he lacked the requisite education, training, and experience. He further complains of the fact that Cook's testimony addressed a note found at the scene of the January 1 burglary instead of the January 21 burglary for which he was charged.

### Applicable Law

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Before admitting such testimony, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. ***Rodgers v. State***, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). The first of these conditions is at issue in the present case.

An appellate court may consider several criteria in assessing whether a trial court clearly abused its discretion in ruling on an expert's qualifications: (1) whether the field of expertise is complex, (2) how conclusive is the expert's opinion, and (3) how central the area of expertise is to

the resolution of the lawsuit. *Id*. at 528. "The degree of education, training, or experience that a witness should have before he can qualify as an expert is directly related to the complexity of the field about which he proposes to testify." *Id*. "If the expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience." *Id*. For example, DNA profiling is scientifically complex, while latent-print comparison (whether of fingerprints, tires, or shoes) is not. *Id*. Additionally, the "more conclusive the expert's opinion, the more important is his degree of expertise." *Id*. "Testimony that 'a given profile occurred one time in 2.578 sextillion (2.578 followed by 21 zeroes), a number larger than the number of known stars in the universe (estimated at one sextillion)' requires a much higher degree of scientific expertise than testimony 'that the defendant's tennis shoe could have made the bloody shoe print found on a piece of paper in the victim's apartment.'" *Id*. Finally, the more dispositive an expert's testimony is of the disputed issues, the more important his qualifications are. *Id*. For instance, if "DNA is the only thing tying the defendant to the crime, the reliability of the expertise and the witness's qualifications to give his opinion are more crucial than if eyewitnesses and a confession also connect the defendant to the crime." *Id*. "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Id*. at 527-28.

## Analysis

In this case, Detective Cook testified that he has been a peace officer for over twenty-eight years, a fraud and forgery investigator for over seventeen years, and attended specialized schools for handwriting comparison and analysis:

> The training that I received for that is a specialized course that's -- each session is about a week long, and it breaks down the mechanics of writing and allows you to see not just individual pages and sentences and words, but to -- to look specifically within just the components of the writing itself: The mechanics of it, the individual strokes, and to --
>
> Much like fingerprints, you would look for individual character -- characteristics within that same -- that we do with the handwriting is to find those individual strokes and characters and compare them from one set of samples to another.

Cook stated that he attended two forty-four hour courses for handwriting examination. He explained that he looks for certain "gross characteristics," including slant, writing size, how hard

9

the writing is, and the writer's baseline. He also looks at "finer qualities," such as individual strokes and graphings. Cook testified that:

> You look for the ligatures, or the connections between the characters. You would look for diacritical marks, which is the way they cross their Ts and dot their Is; whether they do or not; how high it is, how low it is, whether or not they loop their lower-zone characters: The Ys, the Js, anything that comes below the baseline.
>
> All of those things compile a picture together, and they -- they -- that's scattered throughout the handwriting samples. And you look for the totality of those characteristics.

According to Cook, "It's a matter of applying the training and using that experience, just as you would in any other aspect of law enforcement or investigative skills." He testified to applying the lessons he learned to many fraud cases, with successful results, and that his handwriting examinations were used in court proceedings on numerous occasions.

Defense counsel objected to Cook's qualifications to offer an expert opinion on handwriting comparison and, on voir dire, Cook admitted not having taught any handwriting courses, written articles on the topic, or been published on the topic. Nor does he belong to any professional associations in the area of handwriting comparison. He also could not say whether the place where examinations were conducted was accredited by the Texas Forensic Science Commission. The trial court overruled defense counsel's objections to Cook's testimony and Cook proceeded to testify regarding his analysis of the handwritten note left in Risinger's home on January 1. This included testimony that the handwriting on the note belonged to Appellant.

The Texas Court of Criminal Appeals has explained that the "opinions of lay witnesses, when competent, are admissible concerning sanity, insanity, value, handwriting, intoxication, physical condition health and disease, estimates of age, size, weight, quantity, time, distance, speed, identity of persons and things." ***Denham v. State***, 574 S.W.2d 129, 131 (Tex. Crim. App. 1978). Additionally, the code of criminal procedure states, "It is competent to give evidence of handwriting by comparison, made by experts or by the jury." TEX. CODE CRIM. PROC. ANN. art. 38.27 (West 2018).[2] In light of these authorities, we conclude that, like the latent-print comparison referenced in ***Rodgers***, handwriting comparison is not scientifically complex and does not require

---

[2] "Proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath." TEX. CODE CRIM. PROC. ANN. art. 38.27 (West 2018). In the present case, Appellant did not deny his signature under oath.

a heightened degree of scientific expertise. *See **Rodgers***, 205 S.W.3d at 528. Rather, handwriting comparison is an issue close to the jury's common understanding, thereby making Cook's qualifications less important. *See **id***.

Additionally, Cook's testimony was conclusive only with respect to whether Appellant wrote the January 1 note. The central, disputed issue at trial was whether Appellant committed the January 21 burglary; and, whether Appellant penned the January 1 note was certainly not dispositive of that disputed issue. Rather, as discussed above, the record contains sufficient evidence to support Appellant's conviction even absent evidence of the extraneous burglaries. *See **id***. at 533 (in holding trial court did not abuse its discretion by finding witness sufficiently qualified to testify as an expert on shoe and tire print comparisons, court of criminal appeals noted the "abundance of other evidence pointing to appellant as the person who murdered his wife").

Accordingly, under these circumstances, the trial court could reasonably conclude that Cook was sufficiently qualified to testify as an expert on handwriting comparison and did not abuse its discretion by so concluding. *See **id*** at 527-28; *see also **Oprean***, 201 S.W.3d at 726; ***Willover***, 70 S.W.3d at 845. We overrule issue two.

## DISPOSITION

Having overruled Appellant's two issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered October 10, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 10, 2018**

**NO. 12-17-00305-CR**

**CEDRIC STEWART,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0403-17)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*