**Affirmed and Opinion filed October 26, 2021.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-19-00937-CR

**PRINCE WARREN STONE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1574465**

## OPINION

A jury found appellant guilty of aggravated robbery, and the trial court sentenced him to twenty-five years' imprisonment. Appellant contends that the evidence is insufficient to support his conviction, a new trial is required because a missing portion of the record is necessary to the appeal, and the trial court erred by admitting evidence. We affirm.

# I. SUFFICIENCY OF THE EVIDENCE

We first address appellant's second issue challenging the sufficiency of the evidence to support his conviction. *See, e.g.*, *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Appellant argues that the State failed to prove his identity as the perpetrator of an aggravated robbery.

## A. Standard of Review and Legal Principles

When reviewing the sufficiency of the evidence, we consider all of the admitted evidence in the light most favorable to the verdict to determine whether a rational jury could find the essential elements of the offense beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020). The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.* Juries may draw any reasonable inference from the facts so long as each inference is supported by the evidence. *Id.*

To sustain a conviction for aggravated robbery, as pleaded in this case, the State had to prove that appellant, in the course of committing a theft from the complainant, intentionally or knowingly threatened and placed the complainant in fear of imminent bodily injury or death, and appellant used or exhibited a deadly weapon. *See* Tex. Penal Code §§ 29.02, 29.03(a)(2)(A). The State must prove that the accused is the person who committed the crime charged. *Bin Fang v. State*, 544 S.W.3d 923, 927–28 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Identity may be proven through direct or circumstantial evidence, and through inferences. *Id.*; *see also Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016).

## B. Evidence

The complainant was working at the customer service booth of a Kroger grocery store in Spring Branch. A man approached, lifted his shirt to show a

semiautomatic handgun in his waistband, and demanded money. The robber was wearing a hat and sunglasses. A surveillance video of the incident showed the robber's body and the lower half of his face. He was a heavyset older white man with white or gray hair. The complainant was unable to identify appellant in a photo spread; the complainant selected another man's picture but told the administering police officer that he "wasn't too sure" and was only "20 percent, 30 percent" sure. The complainant testified that he was scared, and his attention was drawn to the handgun

A witness outside of the Kroger saw a white or Hispanic man walking fast down a breezeway away from the Kroger. The witness saw the man take his shirt off and put on another very quickly. The witness felt like "something happened." The witness did not see the man's face but noticed the man had a full back tattoo. The jury saw a photograph of appellant's back, which was covered in tattoos. The witness noticed the man drive off in a white work truck that had lettering on it. The witness took a picture of the license plate and provided it to police.

A police officer determined that the truck was owned by a drilling company in Katy. The president of the company testified that the initials of the company, DAS, were on its white pickup trucks. A police officer showed the president a photograph of the man from the surveillance video, and the president said the man looked like appellant. Appellant worked for the company, lived in employee housing, and had access to the trucks. The president testified that no one else who worked for the company looked like appellant.

The State adduced evidence of an extraneous robbery from a few months prior that was similar to the charged offense. An employee at another Kroger in Jersey Village, near Spring Branch, testified that she was working at the customer service desk when an older white man approached her. He lifted his shirt to show a

3

semiautomatic handgun in his waistband, and he demanded money. The robber was heavyset, wearing a hat and sunglasses, and had white or gray hair. A surveillance video of the incident showed the robber's body and the lower half of his face. The employee identified appellant as the robber in a photo spread and in court.

## C.    Analysis

The complainant's failure to identify appellant as the robber does not render the evidence insufficient because there is other evidence to support the jury's finding. *See Conyers v. State*, 864 S.W.2d 739, 740 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). First, the jury was able to view appellant's appearance in court and compare his likeness to the surveillance video of the robbery. Second, appellant's employer identified appellant as the man in the surveillance video. Third, although the complainant was unable to identify appellant, the complainant testified that he was scared and his attention was drawn to the handgun. *See id.* at 741 (sufficient evidence to prove identity for aggravated robbery although the complainant could not identify the robber because (1) the jury could compare photos from surveillance video to the physical appearance of the defendant; (2) the defendant's employer identified the defendant as the robber from the surveillance video pictures; and (3) the complainant testified that he had fixated on the robber's shotgun). Moreover, the jury could have considered the evidence of the similar extraneous offense to prove appellant's identity in the charged offense. *See Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008) ("One of the main rationales for admitting extraneous-offense evidence is to prove the identity of the offender."). Considering all of the evidence, a rational jury could have concluded beyond a reasonable doubt that appellant was the perpetrator of the aggravated robbery. *See Conyers*, 864 S.W.3d at 741.

Appellant's second issue is overruled.

4

## II. MISSING RECORD

In his seventh issue, appellant contends that he is entitled to a new trial because a missing portion of the record is necessary to the appeal's resolution. *See* Tex. R. App. P. 34.6(f)(2) (an appellant is entitled to a new trial if, among other things, "without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed"). Appellant contends that a missing exhibit—the record from another robbery case in which appellant was acquitted—relates to the admissibility of evidence concerning the extraneous offense.[1]

The trial court indicated that it could consider the trial transcript of appellant's prior case to determine if the State was estopped from adducing evidence of the extraneous offense in this case. Appellant's trial counsel offered to provide the record to the court: "I can submit to you a copy of the record." But appellant did not offer the record as an exhibit or otherwise request its inclusion in the record for this case. Thus, it cannot be supplemented. *See In re Marriage of Harrison*, 557 S.W.3d 99, 106 n.2 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (when certain exhibits were "exchanged and discussed" between the parties but none were formally identified, offered, or admitted by the court, the record could not be supplemented with them because they were not part of the record). Appellant's reliance on *Osuch v. State* is misplaced because in that case the missing portion of the record was an exhibit that had been admitted during trial. *See* 976 S.W.2d 810, 810 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Appellant has not shown that any part of the record in this case is missing or lost.

---

[1] As discussed below, appellant contends in his sixth issue that the extraneous offense evidence was inadmissible under the doctrine of collateral estoppel.

Appellant's seventh issue is overruled.

### III.  ADMISSION OF EVIDENCE

In his first, third, fourth, fifth, and sixth issues, appellant complains about the admission of evidence concerning a photograph of his back tattoos and the extraneous offense.

### A.  Standards of Review

We review a trial court's decision to admit evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016).  A trial court abuses its discretion if the decision falls outside the zone of reasonable disagreement—that is, the ruling was "so clearly wrong as to lie outside the zone within which reasonable people might disagree."  *Id.* at 83 (quotation omitted).  We may not substitute our own decision for that of the trial court.  *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018).

A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for an abuse of discretion.  *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009); *see also Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012) ("In essence, a pretrial motion to suppress evidence is nothing more than a specialized objection to the admissibility of that evidence." (quotation omitted)).  The ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Amador*, 275 S.W.3d at 878–79.  At a suppression hearing, the trial court acts as a fact finder and may make reasonable inference from the evidence and may believe or disbelieve all or any part of a witness's testimony.  *Id.* at 878.

6

## B.    Photograph of Appellant's Back Tattoos

In his third and fourth issues, which he argues together, appellant contends that the trial court erred by admitting into evidence a photograph of appellant's back tattoos because the photograph was irrelevant and its prejudicial effect substantially outweighed its probative value under Rule 403 of the Texas Rules of Evidence.

Appellant describes the photograph showing "what appears to be the wings and tail of a large bird, possibly and eagle, an animal face, and the face of a Norse god." Appellant does not complain about the content of the tattoos being displayed for the jury[2] but argues that tattoos in general are "clearly prejudicial" because "society's natural inclination is to revile tattoos as base, personally demeaning, unhealthy and indicative of a rebellious criminal nature."

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *See* Tex. R. Evid. 401; *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). Because the State had to prove appellant's identity as the robber, *see, e.g., Bin Fang*, 544 S.W.3d at 927, evidence tending to prove that he was at the crime scene was relevant. *See Quintanilla v. State*, No. 13-09-00572-CR, 2012 WL 6719449, at *14–15 (Tex. App.—Corpus Christi Aug. 27, 2012, no pet.) (mem. op., not designated for publication) (evidence of tattoos relevant to determine identity even though the defendant did not dispute a witness's identification); *cf. Childress v. State*, No. 01-98-01162-CR, 2000 WL 675672, at *2 (Tex. App.—Houston [1st Dist.] May 25, 2000, no pet.) (mem. op., not designated for publication) (evidence of teardrop tattoo was not relevant because it was not

---

[2] The record shows that some of his tattoos, such as a swastika and confederate flag, were redacted and not displayed for the jury. Further, the trial court announced it would not "send it back to the jury for them to study" but only display it in the courtroom.

offered for the purpose of identifying the defendant).[3]  Evidence of appellant's back tattoos was relevant to his identity because no witness at the crime scene could identify appellant, and the witness outside the Kroger described a tattooed man get into the truck that belonged to appellant's employer.  The State offered the evidence for the purpose of identifying appellant as the robber.[4]

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  Tex. R. Evid. 403.  "Rule 403 favors the admission of relevant evidence and caries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002).  The rule does not allow a trial court to exclude otherwise relevant evidence when that evidence is "merely prejudicial"—it must be unfairly prejudicial and substantially outweigh its probative value. *See Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013).  Evidence is "unfairly" prejudicial if it tends to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000).  A Rule 403 analysis generally balances the following four factors, though they are not exclusive: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019). *See generally Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App.1990) (op. on reh'g).

---

[3] We cite unpublished opinions not for precedential value, but for illustrative and comparative purposes. *See Roberson v. State*, 420 S.W.3d 832, 837 (Tex. Crim. App. 2013)

[4] The State questioned a police officer:

Q.  And as far as identifying a suspect in this case, was that tattoo relevant in your investigation?

A.  Yes, sir.

We reject appellant's contention that tattoos are inherently prejudicial. "Tattoos are not inherently prejudicial." *Silvestre v. State*, S.W.2d 273, 275 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd.); *accord Mason v. State*, No. 06-03-00254-CR, 2004 WL 2952663, at *3 (Tex. App.—Texarkana Dec. 22, 2004, no pet.) (mem. op., not designated for publication). The central issue at trial was appellant's identity.[5] Evidence of appellant's back tattoos corroborated his presence at the crime scene. That is, evidence of appellant's back tattoos made it more likely that his employer correctly identified him as the man in the surveillance video because the full back tattoos were observed by a witness at the scene. Given that the complainant could not identify appellant, the State needed this other evidence of identification. The testimony about appellant's tattoos was brief and there was no mention of their meaning or symbolism. Considering the Rule 403 factors, we conclude that the trial court did not abuse its discretion by admitting this evidence. *See Silvestre*, 893 S.W.3d at 274–75 (no error to require the defendant to show the jury his "TS", i.e., Texas Syndicate, tattooed arms even though the State had other compelling evidence of identification and thus did not have a strong need for the evidence, because the defendant seriously contested his identity at trial, the complainant testified that the man who attacked him had tattooed arms, the tattoos were not inherently prejudicial, and the meaning of "TS" or the Texas Syndicate was not brought to the jury's attention).

Appellant's third and fourth issues are overruled.

---

[5] Appellant contends in his brief that "[t]he only issue in dispute was identity." When appellant moved for a directed verdict, he argued only that the State failed to prove identification. As appellant began his closing jury argument, he stressed, "Now, this case is about identification."

**C.** **Extraneous Offense**

Appellant challenges the trial court's rulings about the admissibility of evidence concerning the extraneous offense. In his first issue, he contends that the trial court erred by overruling a motion to suppress the extraneous witness's identifications of appellant because the pretrial photo array was impermissibly suggestive and tainted her in-court identification. In his fifth issue, he contends that the trial court erred by admitting any evidence of the extraneous offense because its prejudicial effect outweighed its probative value under Rule 403. Finally, in his sixth issue, he contends that the State was collaterally estopped from using evidence of the extraneous offense because similar evidence of the extraneous offense had been admitted and used in another robbery case for which appellant was acquitted.

*1. Identifications*

A pretrial identification procedure "may be 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to be a denial of due process of law." *Foster v. California*, 394 U.S. 440, 442 (1969) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification. *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008). It is the defendant's burden to prove by clear and convincing evidence that a pretrial identification was impermissibly suggestive and that the procedure gave rise to a very substantial likelihood of irreparable misidentification. *McGuire v. State*, No. 14-18-00403-CR, 2020 WL 1887631, at *3 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see also Balderas v. State*, 517 S.W.3d 756, 792 (Tex. Crim. App. 2016).

Suggestiveness may be created, as appellant argues here, by the content of the photo array itself. *See Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). For example, a photo array may be suggestive if the defendant is the only person

10

closely resembling the witness's description. *See id.*; *see also Tapley v. State*, 673 S.W.2d 284, 286 (Tex. App.—San Antonio 1984, pet. ref'd) (impermissibly suggestive photo array because the defendant was the only Anglo man with fair complexion and all others were Mexican–American men).

Appellant contends that the photo array was impermissibly suggestive because the only person whose face was "not oriented straight ahead" was appellant's. Although all six of the men in the photo array share the same or similar age, race, and hair color, appellant's face is posed at a slight angle while the other men are oriented more directly at the camera. Such a minor discrepancy, however, does not make a pretrial identification impermissibly suggestive such that the Due Process Clause prevents its admission into evidence. *See Bethune v. State*, 821 S.W.2d 222, 228–29 (Tex. App.—Houston [1st Dist.] 1991) (not impermissibly suggestive when the defendant's photo was larger than the others, contained a larger portion of his body, was the only photo with a background, and was the only photo that had a subject wearing a shirt with a design and lettering on it, and the shirt had a particular collar), *aff'd*, 828 S.W.2d 14 (Tex. Crim. App. 1992); *see also Glass v. State*, No. 14-12-00172-CR, 2012 WL 6632116, at *4 (Tex. App.—Houston [14th Dist.] Dec. 20, 2012, pet. ref'd) (mem. op., not designated for publication) (insignificant brightness difference between the defendant's photo and others did not render pretrial identification impermissibly suggestive); *Jackson v. State*, No. 05-11-01116-CR, 2012 WL 4097192, at *3 (Tex. App.—Dallas Sept. 19, 2012, pet. ref'd) (mem. op., not designated for publication) ("The camera angle on appellant is a minor difference and does not render the array impermissibly suggestive."). Appellant did not prove by clear and convincing evidence that the pretrial identification was impermissibly suggestive particularly in light of the eyewitness's

testimony that she did not choose his picture based on the way his face was oriented.[6] *See Barley*, 906 S.W.2d at 32–34 (not impermissibly suggestive when the defendant's photo was the only one taken outdoors with "very definitive sunlight" and a pinkish tint and the other photos were taken indoors against a solid background; noting that witnesses testified that the different lighting and background did not influence their identifications).

Appellant's first issue is overruled.

## 2. *Rule 403*

Extraneous offenses are admissible to prove the identity of the perpetrator, including a modus operandi in which the pattern and characteristics of the charged crime and the uncharged misconduct are distinctively similar. *See Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008). In determining whether the prejudicial effect of an extraneous offense substantially outweighs its probative value, we consider the same Rule 403 factors discussed above. *See Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019).

The extraneous offense was highly probative of appellant's identity because the robberies were similar in key respects: both robberies occurred at the customer service desk of a Kroger grocery store on the same side of town, the robberies occurred a few months apart, the robber was similar in appearance (older, white, male, heavyset), he wore a hat and sunglasses, he waited in line until approaching the counter, he showed and pulled a gun from his waistband, and he demanded

---

[6] She testified at the suppression hearing:

Q. . . . . No. 6, did you pick him only because of the way he was facing, or did you pick him because he's the person who robbed you?
A. Because he looked like the person who robbed me, his lips and his chin.
Q. So you didn't base your decision on the way his face is facing you?
A. No.

12

money verbally. *See Burton v. State*, 230 S.W.3d 846, 850–51 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (upholding admission against Rule 403 challenge, reasoning that robberies of banks were highly probative because they were identical in several key respects: the robber targeted different companies' banks that lacked onsite security, the tellers were young, and the robber wore hats and sunglasses).

The State's need for the extraneous offense evidence was great because the complainant was unable to identify appellant as the robber, and no eyewitness could place appellant at the crime scene. His presence at the crime scene was proven by circumstantial evidence and comparison of his physical features to the images from the surveillance video. Identity was the key issue at trial. *See supra* note 5; *Burton*, 230 S.W.3d at 851 (reasoning that the State's need for the extraneous offense evidence was great even though the complainant "never wavered in her identification" because the defendant attacked the credibility of her identification and argued that her identification was incorrect) (citing *Johnson v. State*, 68 S.W.3d 644, 651–52 (Tex. Crim. App. 2002)).

Evidence of the extraneous offense was unlikely to affect the jury in an irrational yet indelible way because the circumstances of the extraneous offense were no more heinous than the charged offense. *See Grant v. State*, 457 S.W.3d 409, 421 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996)). Although extremely similar extraneous offenses carry the potential to impress the jury of a defendant's character conformity, this impermissible inference was minimized through a limiting instruction in the court's charge. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996); *Burton*, 230 S.W.3d at 851.

Finally, evidence of the extraneous offense was relatively brief, primarily comprised of testimony from two witnesses and the short surveillance video exhibit.

13

*See Jabari v. State*, 273 S.W.3d 745, 753 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see also Hudson v. State*, No. 14-16-00581-CR, 2017 WL 5472626, at *8 (Tex. App.—Houston [14th Dist.] Nov. 14, 2017, pet. ref'd) (mem. op., not designated for publication).

Appellant's reference to *Jackson v. State*, 320 S.W.3d 873 (Tex. App.—Texarkana 2010, pet. ref'd), is unpersuasive because in that case the appellate court held that the evidence of a dissimilar robbery was not admissible to prove identity for a capital murder charge without considering Rule 403. *See id.* at 883–84. The court only reached the Rule 403 analysis on the issue of proving intent. *See id.* at 883–85. And the court reasoned that the probative value for proving intent was marginal, the time needed to develop the evidence was substantial, and the issue of intent was not in significant dispute at trial "if it was even disputed at all," so the Sate had "no need" for the evidence. *See id.* at 886.

Considering the Rule 403 factors, we conclude that the trial court did not abuse its discretion by admitting evidence of the extraneous robbery. *See Burton*, 230 S.W.3d at 850–51.

Appellant's fifth issue is overruled.

### 3. *Collateral Estoppel*

When an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ex parte Adams*, 586 S.W.3d 1, 4–5 (Tex. Crim. App. 2019). Courts must determine whether a jury in a prior case "determined a specific fact, and if so, how broad—in terms of time, space and content—was the scope of its finding." *Id.* at 5 (quoting *Ex parte Watkins*, 73 S.W.3d 264, 268 (Tex. Crim. App. 2002)). Before collateral estoppel will apply to bar relitigation of a discrete fact, the defendant must

prove that the fact must necessarily have been decided in favor of the defendant in the first trial. *See id.*; *see also Murphy v. State*, 239 S.W.3d 791, 795 (Tex. Crim. App. 2007).

This test is demanding. *Ex parte Adams*, 586 S.W.3d at 5. Relitigation of the fact is not precluded "simply because it is unlikely—or even very unlikely—that the original jury acquitted without finding the fact in question." *Id.* The mere possibility that a fact may have been determined in the first trial is insufficient to bar relitigation of the same fact in a second trial. *Id.* To bar relitigation, we must hold that it would have been irrational for the jury to acquit in the first trial without finding in the defendant's favor on a fact essential to a conviction in the second trial. *Id.*

The Court of Criminal Appeals has applied the doctrine of collateral estoppel to bar evidence of an extraneous offense when a jury previously acquitted the defendant of the extraneous offense and the State attempts to relitigate an essential fact of the extraneous offense—namely, identity. *See Dedrick v. State*, 623 S.W.3d 332, 335–36 & n.1 (Tex. Crim. App. [Panel Op.] 1981). However, appellant cites no authority applying collateral estoppel under circumstances similar to the ones here: (1) The State presented evidence of an extraneous robbery in a trial for *another* robbery, (2) the defendant was acquitted of that robbery, and (3) the State offered evidence of the same extraneous robbery in a trial for a third, different robbery. That is, appellant was never tried and acquitted of the extraneous robbery.

Under the record before this court, we cannot determine that the jury in the first case would have "necessarily" found that appellant did not commit the extraneous robbery. The jury could have acquitted appellant of the charged robbery in the first trial for reasons irrespective of the extraneous robbery—regardless of whether the jury found in the State's or appellant's favor on the extraneous offense. Even if the acquittal would have been "very unlikely" absent a finding favorable to

15

appellant on the extraneous offense, nothing in this record shows that the jury's finding of acquittal in the first trial would have been irrational.

Appellant's sixth issue is overruled.

## IV.  CONCLUSION

Having overruled each of appellant's issues, we affirm the trial court's judgment.

/s/     Ken Wise
Justice

Panel consists of Justices Wise, Bourliot, and Wilson.

Publish — Tex. R. App. P. 47.2(b).